ALGERNON S. VAIL *et al.*

*v.*

JAMES MIX *et al.*

</div>

1. PRESCRIPTION — *easement or right to overflow land.* A right to overflow land, like easements in general, may be acquired by an uninterrupted and adverse enjoyment for twenty years, or for the period of time fixed by the statute of limitations for the right of entry upon lands.

2. INJUNCTION — *party precluded from, after long acquiescence.* Where the owners of land, which is overflowed by a dam, acquiesce in the erection of the dam, and permit the party erecting the same to make large expenditures in the same and in building and maintaining a mill, and suffer the dam to be kept up for twenty-four years, their acquiescence for so great a time will preclude them from enjoining the rebuilding and repair of a part of the dam carried away.

3. STATUTE CONSTRUED — *condemnation for mill.* The provision in the statute relating to mills and millers, which prohibits the erection of a dam, etc., which will injure the health of the neighborhood by the overflow of lands, has application only to proceedings had under that statute, and does not apply on bill for injunction to prevent the repair of a dam, long before erected.

4. INJUNCTION — *nuisance affecting public health.* For a threatened injury to the public health, as by the erection of a dam and the consequent overflow of lands, a court of equity will not interfere at the suit of a few private individuals, unless it be shown in the bill that their health is or will be directly affected by the nuisance.

APPEAL from the Circuit Court of Kankakee county; the Hon. N. J. PILLSBURY, Judge, presiding.

Mr. C. R. STARR, and Mr. W. F. SINGLETON, for the appellants.

Mr. S. R. MOORE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill for an injunction, brought by Algernon S. Vail, Alfred Brown, David Lynds, and Enos Van Kirk, on the 26th day of June, 1874, in the Kankakee county circuit court, to restrain appellees from repairing the mill dam across the Kankakee river, at Momence, in Kankakee county. Upon the hearing of a motion to dissolve the temporary injunction which had been granted, upon bill, and answers, and affidavits filed therewith, the court below dissolved the injunction and dismissed the bill.

Three of the complainants, Vail, Brown and Lynds, take this appeal to reverse the decree.

The leading facts are as follows :

This mill power was established where it is now situated, prior to the year 1842. At the point where the dam is situated, there is an island in the river, which divides the river into two branches, known as the north branch and the south branch. Prior to 1842, a dam was built across the north branch, and this dam made power sufficient to run the mill until 1849, and run both a grist mill and a saw mill. This dam is maintained near the centre of the island, and no question is made concerning it. In 1849, the erection of the dam in question was commenced across the south branch, at the head of the island, about eighty rods above the dam across the north branch, and was finished in the spring of 1850.

These dams have been maintained permanently, and continuously up to the present time, excepting occasional breaks which were immediately repaired. In March, 1874, a portion of this dam, on the south branch, at the head of the island, went out. An undivided two-thirds part of this water power and mill privilege was purchased by George W. Cass, in 1870, which he now owns. He does not wish to have the dam repaired, being largely interested in lands above the dam affected by overflow. The owner of the remaining one-third interest was about to proceed in the work of repairing the dam, when this bill was filed and the temporary injunction obtained.

The bill alleges that the repair of the dam will cause the several lands of the complainants to be overflowed with water and damaged : those of Vail to the amount of $3,500 ; those of Brown, $1,800 ; those of Lynds, $4,000; those of Van Kirk, $5,000 ; that they never consented to the building of the dam ; that their damages have never been assessed, or released by them ; that the owner of the said undivided one-third interest is insolvent; that he threatens to enlarge and increase the dam for the production of increased water power ; and the bill further charges that the health of the neighborhood will be injuriously affected by the repair of the dam, and prays that the defendants may be enjoined until they shall first have had

a jury empannelled to assess the damages of complainants, and until the jury so empannelled shall find that the erection of the dam will not affect injuriously the health of the neighborhood. The bill is filed in behalf of the complainants, and all others in like situation who shall come in and contribute to the expenses of the suit.

There is no proof of the allegation in the bill of the insolvency of the defendant, who was about to proceed and make the repair, but proof to the contrary. The charge of any intention to enlarge and increase the height of the dam is entirely disproved by the evidence. The proof shows the break in this dam to be about thirty feet; that the length of the dam is from two hundred and fifty to three hundred feet; that it is important for the safety of the remaining portion of the dam that the repairs be speedily made; that delay will endanger the carrying away and destruction of the entire dam, and that to rebuild it would involve an expense of from two to four thousand dollars, so that to stay the work of repairing this dam until the time prayed for would be to expose the owner of the mill property to the hazard of a large pecuniary loss.

The proofs make out a case of large damages to a great number of persons as likely to result from the overflowing of lands, to be caused by the erection of this dam, and much more so to other persons than the complainants; but none others have come in under the bill and become parties, and we can only consider the case of the complainants.

As respects the claim for damages to their lands, we are of opinion that their acquiescence in the maintenance of the dam has been for so long a time that they are not entitled to the interposition, by injunction, of a court of equity in their behalf. The dam has been maintained since 1850, some twenty-four years. The proofs show that during all this time Vail and Lynds have lived upon these lands they claim will be damaged, near the dam, and were cognizant of the building and maintenance of the dam, and of the overflowing of their lands caused thereby. Vail himself assisted in the building of

the dam. True, they testify that they did not consent, and that they claimed damages, and that they were promised they should be paid. But the fact remains that they did suffer this adverse use of their lands, by the backing of water upon them for this length of time, and the expenditure for the erection of the dam and mill to be incurred, without having their damages previously paid or ascertained. The lands of Brown, in addition to having been similarly affected for the same length of time, appear to have come to him some five or six years ago, in right of his wife, to whom, as the heir of one Robert Hill, the lands had descended; and that Hill, June 1, 1850, by his deed, conveyed to Chatfield, Strunk & Mix, the persons who built the dam, "All my (his) right, title and interest in or to the head of the island as may be in the northeast quarter of section 19, town 31, range 14, known as Mill Island; also sufficient ground and privilege adjoining a mill-dam to the east shore of the Kankakee river, at or near the section line dividing the southeast quarter of section 18 and the northeast fractional quarter of section 19, town 31, range 14, and sufficient ground on said east bank for the building of abutments and protection of said mill-dam." In answer to this, Brown merely shows that Hill had previously conveyed the northeast quarter of section 19 to one Samuel Hill. But the lands of Brown are the S. frac. S. W. $\frac{1}{4}$ section 17 and the frac. S. $\frac{1}{2}$ S. E. $\frac{1}{4}$ section 18 in said township and range. And as we understand the second clause of the above grant, it was a grant of the privilege, by the ancestor owning the lands claimed by Brown, to erect this dam, and the fact of a previous conveyance having been made by Hill of the N. E. $\frac{1}{4}$ of 19, would not detract from the effect of the grant as respects these lands of Brown. As respects Brown, this grant of privilege seems to be a further ground to preclude him from claim for relief.

Van Kirk not having joined in the appeal, it is unnecessary to consider his case.

A right to overflow land may, like easements in general, be acquired by an uninterrupted and adverse enjoyment for

twenty years, or for the period of time, whatever it may be, limited by the statute of limitations for the right of entry upon land.    Angell on Water Courses, § 372.    Whether the acquiescence has been such in this case as to bar an action at law for damages, we need not decide.    We are satisfied that it has been such as to justify the refusal of an injunction.

The claim for relief on the ground of a nuisance seems to be based mainly on provisions contained in the statute in regard to Mills and Millers, Revised Statutes 1874, providing a method for the ascertainment of the damages to lands in case of the erection, repair, or increase in height of a mill-dam, one provision being that "no such dam shall be erected, or increased in height, or maintained, when the health of the neighborhood will be injuriously affected thereby;" another, that "the jury which shall be empannelled to ascertain the damages shall also inquire whether the health of the neighborhood will be injuriously affected by the overflow of any land, and if they shall find that it will be so affected, the petition shall be dismissed."

So far as respects any proceeding under this statute, it would be subject to be defeated by the fact that the health of the neighborhood would be injuriously affected by the contemplated work.    But these provisions do not control in case of a bill in chancery of this character.

For an injury to the public health, it would seem the proceeding, instead of being on the part of three or four individuals, should be on the part of a representative of the public, upon the information of the proper public officer.    It is true, that it is laid down that in case of a public nuisance a court of equity will not only interfere, upon the information of the Attorney General, but also upon the application of private parties directly affected by the nuisance.    1 Story's Eq. Jur., § 924.

But there is no allegation in the bill, or proof whatever, that these appellants themselves ever have been, or will be, in any wise affected, as respects health, by reason of the dam, the allegation and proof only being that the health of the neighbor-

hood will be injuriously affected. The only injury which they suggest, in respect to themselves, is damage to their lands.

We are of opinion the appellants have failed to show any equitable claim to relief, and that the injunction was properly dissolved, and the decree will be affirmed.

*Decree affirmed.*