## George W. McKenzie

*v.*

## Angenett Elliott.

*Filed at Ottawa June 12, 1890.*

1.  Easement—*by prescription—right of way for an alley.* An easement in land may be acquired by an uninterrupted and adverse enjoyment for a period of twenty years. So where a party purchased a lot of ground upon the assurance that a strip sixteen feet wide should be left as an alley adjoining the lot, which strip was then staked off, and the purchaser erected buildings and fences on the line of the lot with reference to the alley, and used and improved such strip under claim of right for more than twenty years, it was *held,* that such purchaser acquired a right of way over the alley by prescription.

2.  While it is true that a private right of way can not be gained by the parol agreement of him who creates it, yet when, under such agreement, the way has been used for twenty years with the acquiescence of the owner, a prescriptive right to the same will thereby be gained. That the use began by permission will not affect the prescriptive right, if the other requisites exist.

3.  It is not necessary that the party claiming an easement or right of way shall be the only one who can or may enjoy that or a similar right over the same land, but his right should not depend for its enjoyment upon a similar right in others. He must exercise it under some claim existing in his favor, independently of all others.

Writ of Error to the Circuit Court of Will county; the Hon. Charles Blanchard, Judge, presiding.

Messrs. Hill & Haven, for the plaintiff in error:

A conveyance by metes and bounds conveys only the land described and then existing easements. A new and original way can not be created across another's land by parol grant. Washburn on Easements, sec. 2, pp. 12, 13; *Grant* v. *Chase,* 17 Mass. 443; *Russell* v. *Scott,* 9 Cow. 279; *Duinneen* v. *Rich,* 22 Wis. 550.

A dedication is properly only to the public use. There can be no parol dedication, properly speaking, to private uses.

A private pass-way can not be created by parol dedication. Washburn on Easements, sec. 5, pl. 7, 7 a; *Hall* v. *McLeod,* 2 Metc. 98; *Wilder* v. *St. Paul,* 2 Minn. 208; *Forbes* v. *Balenseifer,* 74 Ill. 184; *Insurance Co.* v. *Littlefield,* 67 id. 368.

A private way over another's land may be created by express grant, by reservation of such a right in a deed, and by prescription, but not by mere license or verbal consent.   See Washburn on Easements, secs. 3, 4, 5; *Forbes* v. *Balenseifer,* 74 Ill. 183; *Insurance Co.* v. *Littlefield,* 67 id. 368.

But under section 3 of our statute concerning plats, premises intended for any street, alley-way, common, or other use, may be dedicated to either public or private use by such plat. Rev. Stat. 1874, chap. 109, sec. 3; *Smith* v. *Heath,* 102 Ill. 130; *Kuecken* v. *Voltz,* 110 id. 264; *Clarke* v. *Gaffeney,* 116 id. 362; *Cihak* v. *Klekr,* 117 id. 643.

To constitute an easement by prescription, the use and enjoyment of what is claimed must have been adverse, under a claim of right, exclusive, continuous and uninterrupted, or the use must have been definite, both as to manner and locality. It must have continued for the whole period, without interruption.   It must have been accompanied by a claim of right adverse to the owner of the land, and not have been under lease and license of the owner, for if the claim has been in subordination to the right of the owner, a grant could not be presumed.   Washburn on Easements, sec. 4, pl. 26, p. 86; *Railway Co.* v. *Hoag,* 90 Ill. 348; *Dexter* v. *Tree,* 117 id. 532.

A mere permissive use of the land of another for half a century confers no right of continued enjoyment.   So long as it is merely permissive it confers no right, but the proprietor can prohibit its use, or discontinue it altogether, at his pleasure.   *Hall* v. *McLeod,* 2 Metc. 102; *City of Quincy* v. *Jones,* 76 Ill. 232; *Dexter* v. *Tree,* 117 id. 532.

A mere parol license to enter upon, use and enjoy the land of another, is within the Statute of Frauds, and can not be enforced in equity, even after the expenditure of large sums

of money on the strength of such license, and the land owner will not be estopped, in equity, from revoking such license and reclaiming the land.    *Woodward* v. *Seely,* 11 Ill. 157; *Nat. Stock Yards* v. *Ferry Co.* 112 id. 384.

Mr. C. W. Brown, and Mr. Fred Bennitt, for the defendant in error.

Mr. Justice Magruder delivered the opinion of the Court:

This is a bill filed on February 26, 1887, in the Circuit Court of Will County by the defendant in error against the plaintiff in error to enjoin the latter from obstructing an alley lying east of the former's homestead lot, and from interfering with her use of said alley.    The cause was heard upon bill, answer, replications and proofs taken, and a decree was rendered on January 7, 1889, finding the issues in favor of the complainant.    A writ of error has been sued out from this Court for the review of said decree.

Complainant's lot has a frontage of forty feet on the South side of Washington Street in Joliet and a depth of one hundred and thirty feet.    She bought the lot in the summer or fall of 1865 from one Frederick Gritzner, who then owned all of block 5 in the Canal Trustees' subdivision of W. $\frac{1}{2}$ Sec. 15, Town. 35, N. R. 10 E. of 3d P. M. except a portion thereof that had been sold to one Howk.    Gritzner executed to her a deed, dated April 2, 1866, conveying the lot by the following description: commencing at a point 99 feet west from the N. E. corner of said block 5, thence running 130 feet south, thence west 40 feet, thence north 130 feet, thence east 40 feet to the place of beginning, in said block 5, etc.

In April, 1875, Charles F. Gritzner, the son of Frederick, and three other persons, who owned certain lots in said block 5, executed, and recorded in the recorder's office of Will County, a certain plat showing the location of the lot and alley in question, a portion of which plat is as follows:

The strip of land alleged to be an alley is sixteen feet wide and one hundred and thirty feet deep, and lies directly east of complainant's lot and between her lot and that of Howk, the latter having a frontage of 82.50 feet on the north and converging to a point on the south, so as to have the form of the letter V.

We do not deem it necessary to go into an extended analysis of the evidence. We think that defendant has acquired a right of way over, or an easement in, the strip of land on the east side of her lot by prescription. She was in the continuous and uninterrupted use of it for more than twenty years before filing her bill, and such use was adverse. We have held that an easement in land may be acquired by an uninterrupted and adverse enjoyment for a period of twenty years. (*Vail et al.* v. *Mix*, 74 Ill. 127; *C. & N. W. Ry. Co.* v. *Hoag*, 90 id. 339; *Totel* v. *Bonnefoy*, 123 id. 653).

When defendant in error made her purchase, she desired a lot that should extend up to the west line of Howk's lot, but was told by Gritzner that she could not do so, because the strip sixteen feet wide west of the Howk lot was to be reserved for an alley. In 1865 and 1866 and thereafter, there was a fence on the west side of Howk's lot running the length of the alley on the east. Gritzner himself measured the lot of defendant in error and the alley, and placed a stake on the east side of the alley and another on the west side of her lot. In the fall of 1865, defendant in error moved a house upon the lot, the east side of the house being on the west line of the strip in question. She also built a barn on the south part of the lot and a shed just north of the barn. Doors opened upon the alley in the east ends of both the barn and the shed. There were stone walls under the dwelling house, and there was an opening from the alley into the coal cellar under the house. The husband of defendant in error was a teamster, and the lot was useless to them without access to the rear through the

alley. Except through the alley the barn and wagon shed could not be reached, nor could coal be put into the coal cellar.

The house was burned down in 1872, but was rebuilt without delay, the eastern end of the new house resting upon the west line of the strip and containing an opening into the coal cellar as was the case with the old house. As soon as defendant in error bought the lot, she built a bridge over the ditch on the south side of Washington Street, so that the alley could be entered from the street, and her husband graded and filled the alley so as to make it fit for use. She and her husband lived upon this lot and used the alley for putting coal into the cellar, and as an approach to the barn and wagon shed in the rear, from the fall of 1865 until January 3, 1887, when her husband died. Their use of the strip during this period of time is proven beyond question and is not denied by plaintiff in error.

It is said that the defendant in error used the alley by permission of the owners, and therefore that her possession was not adverse. The testimony shows that the defendant in error would not have bought the lot without the use of the alley; that such use was a part of the consideration for the purchase, and that both Frederick Gritzner and his son Charles told her the strip was to be kept open as an alley. They and their grantees acquiesced in her use of it for more than twenty years. We cannot see that the use was any more permissive than if there had been a written grant of the easement. It is true that a right of way cannot be gained by the parol agreement of him who creates it, but where, under such agreement, the way has been used for twenty years with the acquiescence of the owner, a prescriptive right to the same has been thereby gained. "It is no objection to gaining an easement by prescription that the same was originally granted or bargained for by parol. That the use began by permission does not affect the prescriptive right, if it has been used and exercised for the requisite period, under a claim of right on the part of the owner of the dominant tenement. Land itself may be gained

in that way as well as an easement in it." (Washburn's Ease-
ments & Servitudes, (4th ed.) page 154, sec. 28).

On November 6, 1872, Frederick Gritzner conveyed to his
son Charles all of said block 5 except what he had previously
sold to defendant in error and to Howk and to three other
persons. On August 8, 1881, Charles Gritzner made a contract
in writing with one Fitch for the sale to him of lot 4 of the
subdivision made as above stated in April, 1875. Fitch as-
signed this contract to McKenzie, the plaintiff in error, and
afterwards on September 11, 1885, Charles Gritzner made a
deed of said lot 4 to plaintiff in error.

As we understand the plat of 1875, lot 4 includes the piece
of ground 39 feet wide on the north and 106 feet wide on the
south, which lies to the west of the lot of defendant in error,
but it seems to be doubtful whether the strip in question, 16
feet wide and to the east of her lot, is intended to be repre-
sented as a part of lot four. The word, "alley," is not marked
on the strip, but there is a cross at the foot of it on the east
side, and its position on the plat would seem to indicate that
the makers of the plat intended to designate the strip as an
alley. A lot only 16 feet wide can be of little use.

But, however this may be, we think that Charles Gritzner
had full notice of the right of way of defendant in error over
the strip. He negotiated the sale of the lot for his father to
Mrs. Elliott. He says in his testimony that the strip was to
be reserved for an alley when she bought her lot, and that she
was so informed when she made her purchase. He speaks of
some arrangement that was to be made with other lot-owners
in block 5 for the extension of the alley at some time in the
future through the part of lot 4 lying south of Mrs. Elliott's
lot to Marion Street on the south, and states that, when such
extension should be made, the alley as extended would become
open to the use of the public. But Mrs. Elliott's right of way
over the strip was not lessened, because she did not oppose
the arrangement in question. Such extension, however, was

never made; the alley never became a public one, and her use of it continued for twenty years, and more.

Nor can her rights be affected by the fact that the alley was occasionally used by Howk, whose ground abutted upon the east side of the alley, and by Fitch & McKenzie, who were partners in the coal business having their office on the north side of Washington Street nearly opposite the entrance to the alley, and whose teams were in the habit of going through the alley to the part of lot 4 lying south of defendant in error. "It would seem that it is not necessary that the one who claims the easement should be the only one who can or may enjoy that or a similar right over the same land, but that his right should not depend for its enjoyment upon a similar right in others, and that he may exercise it under some claim existing in his favor, independent of all others." (Washburn's Easements and Servitudes (4th ed.) page 164, sec. 44). (Id. pages 165, 166 and sec. 46).

Fitch and plaintiff in error had full notice as early as 1880 of the rights of defendant in error in the strip in question. Their place of business was so located that they could easily see the alley and observe the daily use of it by defendant in error and her husband. They sold coal to her, and their teams delivered coal into the coal cellar under her house by hauling it through the alley to the opening in the east side of the house. They knew that the alley was her only approach to the barn and shed in the rear. The strip was enclosed on the east by a fence and on the west by the house, barn, shed and fence of the defendant in error, and had been filled in with gravel and other material to a depth of eighteen inches, so as to constitute a travelled road way. These circumstances indicated so clearly its use as an alley, that notice of such use was furnished by a casual glance at its appearance and surroundings.

Plaintiff in error sought to show, upon the trial of the cause, that before the expiration of the twenty years and after his purchase of lot 4 in 1885, he had given Mrs. Elliott notice that

she could no longer use the strip without paying for it. It is not pretended that he gave any such notice in person, but that he did so through one Kaiser, a driver of one of his coal wagons. After a careful examination of Kaiser's evidence we are satisfied that he did not inform Mrs. Elliott of the objections of plaintiff in error to her use of the alley until after the death of Mr. Elliott, which occurred on January 3, 1887, and consequently after the period of twenty years had elapsed.

Some testimony was also introduced with a view of showing that the use of the alley was interrupted during the running of the twenty years, so as to prevent any prescriptive right from accruing. We think the testimony so introduced was insufficient for the purpose intended by it. For instance, Fitch or McKenzie at one time piled some wood in the alley near the north end of it and just south of the entrance to it from Washington Street. The evidence of Kaiser shows that the wood was on the east side of the alley, leaving a space of twelve feet on the west side of it, so that Elliott could easily pass it with his team in going to his barn in the rear. The fact, that defendant in error did not insist upon the immediate removal of the wood when it could be so easily passed, did not operate as a waiver in any way of her right to an easement in the strip in question.

Plaintiff in error showed Mrs. Elliott, upon her cross-examination, a letter purporting to have been written by her to "Mr. Gritzner." The letter bears no date. It is not certain whether it was addressed to the elder Gritzner or his son. It is said to have been delivered to Charles in 1873, but it speaks of a sale of the part of lot 4 lying South of Mrs. Elliott's lot, and there was no sale of such part by Charles Gritzner until 1881. Neither Charles Gritzner nor the plaintiff in error says anything about the letter in his testimony. It is said that in this letter defendant in error proposed to buy the strip of ground of Gritzner, and that, by making such proposition, she admitted Gritzner's right to sell the strip and thereby divert

it from its use as an alley.· We do not think the letter is capable of any such construction. She swears that what she proposed to buy was not the alley, but the fraction of lot 4 lying south of her lot. She is confirmed by the language of the letter, wherein she says : "I have lernt that you had sole *your land back of us;* now you know that I tole when you sole it and did not need a alley, that I would buy *what was left.*"

Her own testimony and that of Charles Gritzner show that the words, "did not need a alley," refer to the contemplated extension of the alley on the east side of her lot southward to Marion Street. Such extension would necessarily take a strip sixteen feet wide from the east side of the fraction of lot 4 south of her lot. The proof shows that Gritzner had had much trouble with the lot owners about the opening of the alley, and had failed to consummate it. Inasmuch as the idea of taking a part of said fraction of lot 4 for an alley seemed to be abandoned, Mrs. Elliott proposed to buy such fraction of lot 4, but her proposition by no means included the strip of land east of her lot.

We find no error in the action of the court below. The decree of the Circuit Court is accordingly affirmed.

*Decree affirmed.*