## GEORGE BEIDLER *et al.*

*v.*

## THE SANITARY DISTRICT OF CHICAGO.

*Opinion filed October 24, 1904.*

1. RIPARIAN RIGHTS—*limit of use of water by riparian owner.* The limitation upon and extent of the use of water by a riparian owner is, that it shall not interfere with the public right of navigation nor in a substantial degree diminish and impair the right of use of the water by other riparian owners.

2. SAME—*when owners of lots bordering on canal acquire riparian rights by prescription.* Where a riparian owner, without interfering with the public right of navigation, diverts water from the river to canals constructed upon his land and sells lots bordering upon the canals, the owners of such lots may acquire by prescription the same riparian rights in the waters of the canals as they would have had if the canals were natural waterways.

3. SAME—*right of riparian owners to have level of water maintained.* Owners of lots bordering upon canals in the waters of which they have acquired riparian rights by prescription, have the right, subject to the right of the public to make improvements for navigation, to have water in the canal remain at its original level.

4. SAME—*what is meant by right of navigation.* The right of navigation, or of improvement for navigation, which is superior to the rights of a riparian owner, must be to navigate or improve navigation in the river itself, or some lake or stream naturally flowing into the river or into which the river naturally flows, and not to make navigable an artificial channel connecting therewith.

5. SAME—*effect of lowering level of water in canals by construction of drainage canal.* The lowering of the level of the water in dock canals on the south branch of the Chicago river by the construction of the drainage canal being an obstruction to ingress and egress is a damage to private property for public use, for which compensation is guaranteed by the constitution and a recovery authorized by section 19 of the Sanitary District act.

6. SAME—*when liability is not excused as incident to exercise of police power.* Liability for the obstruction of the passage to and from canal docks, due to the lowering of the water by reason of the construction of the drainage canal, is not excused upon the ground that the construction of the canal was a proper exercise of the police power of the State for safeguarding the public health.

7. DAMAGES—*the measure of damages for lowering water level.* The measure of damages to abutting owners from the lowering of the water level in dock canals by the construction of the drainage

canal is not the expense of deepening the canals and remodeling the docks, but is the difference in the market value of their property immediately before and after construction of the drainage canal.

8. PLEADING—*incorrect measure of damages not a defect open to general demurrer.* An incorrect measure of damages in a declaration otherwise stating a good cause of action is not a defect which is reached by general demurrer.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This suit was brought in the circuit court of Cook county by George Beidler and others, who are owners as tenants in common of the lots hereinafter mentioned, against the Sanitary District of Chicago, to recover as damages the amount expended by plaintiffs in deepening or lowering the canals hereinafter referred to, and in repairing certain docks fronting on said canals and the south branch of the Chicago river, and for permanent injury to said lots, the nature of which is not specified. The form of the action was trespass on the case. A declaration was filed, setting up the following facts as a cause of action:

More than twenty years prior to January 17, 1900, the South Branch Dock Company, a corporation, was the owner of a large tract of land, divided into lots, in Green's South Branch addition to the city of Chicago. Some of these lots fronted on the south branch of the Chicago river, which is and was a natural navigable water-course opening into Lake Michigan, but a large majority of them lay north of the lots which fronted on the river. The dock company had excavated and constructed a number of large canals through the property so owned by them, extending north from said river several hundred feet and connected therewith, and then so subdivided their property that each lot not fronting on the waters of the river would front on one of the canals. The canals opened into the river, which, in turn, emptied into Lake Michigan. The river supplied them with sufficient water to keep their depth at about seventeen feet at all times. This was their only source of water supply. They varied in

length, the longest extending back from the river 2560 feet, and were wide enough to admit large barges, steamboats, ships and other vessels, and such vessels passed to and from points within each of said canals into Lake Michigan by means of said canals and river, and conveyed lumber, goods and merchandise to and from such points by means thereof. Plaintiffs' premises, fronting on the canals and on the river, contained valuable docks which were used in connection therewith for loading and unloading said vessels.

After constructing this system of canals, the dock company sold sixty-six of the lots belonging to it to Jacob Beidler, and at the latter's death, the lots passed to plaintiffs by descent. Seven of these lots front on said south branch of the Chicago river. Each of the remaining lots fronts on one or another of the canals. The lots are leased to tenants, who use them for lumber yards and for dock purposes, under leases which provide that the lessors shall at all times keep a sufficient amount of water in said canals to furnish means of access for vessels to said premises. The lots fronting on the river extend to the middle thereof, and the ones fronting on the canals extend to the middle of such canals.

The defendant drainage district, which is a public corporation, on January 17, 1900, connected its drainage channel, constructed for sanitary purposes, with said branch of the Chicago river, and large quantities of water have ever since flowed from said river into said channel, which diminished the supply of water in the river and in each of the canals, lowering the water six feet, which made the canals too shallow for the large vessels to enter the canals or reach the premises of the plaintiffs which fronted on the canals. Plaintiffs were therefore compelled to excavate and deepen the canals to the extent that the water had been lowered therein, which they did at a cost of $10,000. The docks along the canals and along the river were also rendered useless by reason of the water being lowered therein by the drainage channel, and plaintiffs repaired them at a cost of $15,000.

The defendant filed a general demurrer to the declaration, the demurrer was sustained, and judgment entered in favor of the defendant. Plaintiffs appealed to this court, claiming that there has been a taking of property without compensation, within the meaning of section 13 of article 2 of the constitution of this State; that sections 8 and 19 of the Drainage act of May 29, 1889, under which appellee was created, gives them a right of action; and that they are entitled to recover under their common law rights as riparian owners, for a diversion of the water, whereby they have been injured.

WILLIAM J. LACEY, for appellants:

Appellants are entitled to recover, under their common law rights as riparian owners, for a diversion of the water, whereby they have been injured. *Kewanee* v. *Otley,* 204 Ill. 402; *Juvinall* v. *Drainage District,* 204 id. 107; *Railway Co.* v. *Drainage District,* 188 id. 305; *Revell* v. *People,* 177 id. 478; *Payson* v. *People,* 175 id. 277.

If the property of a riparian proprietor is taken or damaged for a public purpose, his right to compensation, under the constitution, is not limited to cases of illegal trespass, but may extend to acts which are legal. *Dock Co.* v. *Morawetz,* 195 Ill. 398; *Railroad Co.* v. *Turner,* 194 id. 575; *Chicago* v. *Jackson,* 196 id. 496; *Dwight* v. *Hayes,* 150 id. 273; *Aldis* v. *Railway Co.* 203 id. 567; *Rigney* v. *Chicago,* 102 id. 64.

The diversion of the water by the sanitary district was a taking of property, so the loss was different in kind from that suffered by the general public. The damages, though not a taking of property, differ in kind from those suffered by the general public. *Kewanee* v. *Otley,* 204 Ill. 402; *Aldis* v. *Railway Co.* 203 id. 567; *Chicago* v. *Jackson,* 196 id. 496; *Dock Co.* v. *Morawetz,* 195 id. 398; *Railway Co.* v. *Drainage District,* 194 id. 310; *Payson* v. *People,* 175 id. 267; *Elmore* v. *Drainage Comrs.* 135 id. 269; *Ginn* v. *Drainage District,* 188 id. 305; *Railway Co.* v. *Turner,* 194 id. 575; *McCombs* v. *Akron,* 15 Ohio, 481.

Permission to the Sanitary District of Chicago from the Secretary of War to take the water from the south branch of the Chicago river does not relieve it from compensating owners for property taken or damaged. *Cobb* v. *Park Comrs.* 202 Ill. 427; *Lussem* v. *Sanitary District,* 192 id. 419; *Cummings* v. *Chicago,* 188 U. S. 410.

Appellants' lots were contiguous and adjoining the south branch of the Chicago river. As to the balance of the lots in question appellants are riparian proprietors. *Water Co.* v. *Minneapolis,* 41 Minn. 270; *Reading* v. *Althouse,* 93 Pa. St. 400; *Weatherby* v. *Merklejohn,* 56 Wis. 73; *Lawson* v. *Mowrey,* 52 id. 235; *Sutcliffe* v. *Brook,* 9 Jur. (N. S.) 1112; *Wood* v. *Wand,* 3 Exch. 748; Coulson & Forbes on Waters, 247-261.

The sanitary district, when it purchased the land whereby it connected its drainage canal to the said south branch of the Chicago river, became a riparian owner and entitled to a reasonable use of the water, but it could take no more water than one owner was entitled to, having due regard for the rights of others, and when it lessened the supply of water to which every riparian owner was entitled, it thereby became liable in damages for all injuries resulting. 28 Am. & Eng. Ency. of Law, 978, 979; *Wright* v. *Howard,* 1 Sim. & Stu. 190; *Ewing* v. *Colquholm,* L. R. 2 App. Cas. 839; *Colburn* v. *Richards,* 13 Mass. 420.

SEYMOUR JONES, and WILLIAM BEEBE, (JAMES TODD, of counsel,) for appellee:

Appellants are not entitled to recover under sections 8 and 19 of the act under which the Sanitary District of Chicago was created. *Aldrich* v. *Railway Co.* 95 Ill. 456; *New River Co.* v. *Johnson,* 105 Eng. C. L. 434; *Transit Co.* v. *Sanitary District,* 125 Fed. Rep. 611.

The court will take judicial notice that the Chicago river runs through the city of Chicago, and that it is a natural outlet for drainage and sewerage. *Harmon* v. *Chicago,* 110 Ill. 400; *Canal Comrs.* v. *East Peoria,* 179 id. 214.

The police power of the State may be delegated to the various municipalities throughout the State and may be extended beyond the limits of the municipality. *Packing Co.* v. *Chicago,* 88 Ill. 221; *Gundling* v. *Chicago,* 176 id. 340; *Harmon* v. *Chicago,* 110 id. 400.

The property of plaintiffs not adjacent to the Chicago river is not riparian property, and the owners thereof have no riparian rights. Gould on Waters, 300, 301; *Railroad Co.* v. *Healy,* 94 Ill. 416; *Paper Co.* v. *Kelly,* 70 Wis. 287; 2 Kinkead on Torts, sec. 682; *Pehryhn Co.* v. *Granville,* 82 N. Y. Sup. 547; *Haydon* v. *Long,* 8 Ore. 244; *Lake Superior Sand Co.* v. *Emerson,* 38 Minn. 406; *Delaplaine* v. *Railway Co.* 42 Wis. 314.

Private individuals cannot acquire prescriptive rights against the public. *Railway Co.* v. *Hoag,* 90 Ill. 339; *Stone* v. *Mississippi,* 101 U. S. 814; *Quincy* v. *Jones,* 76 Ill. 231; *Beer Co.* v. *Massachusetts,* 97 U. S. 225; *Parker* v. *People,* 111 Ill. 581.

The true measure of damages is the difference in the value of the property before and after the improvement is completed. There can be no recovery for the money expended in dredging the slip and in reconstructing the docks. *Springer* v. *Chicago,* 135 Ill. 560; *Eberhart* v. *Railway Co.* 70 id. 349; *Elgin* v. *Eaton,* 83 id. 535; *Railroad Co.* v. *Hall,* 90 id. 45.

The rights of the plaintiffs in the waters of the south branch of the Chicago river are subject to the paramount authority of the State to make any and all improvements to facilitate navigation. *People* v. *St. Louis,* 5 Gilm. 3; *Bridge Co.* v. *Lonergan,* 91 Ill. 508; *Cummings* v. *Chicago,* 188 U. S. 410; *Brooks* v. *Improvement Co.* 82 Me. 17; *Escanaba Co.* v. *Chicago,* 107 U. S. 678; *Eldridge* v. *Trezevant,* 160 id. 452; *Gibson* v. *United States,* 166 id. 269.

There can be no recovery for damages resulting from the proper exercise of the police power for preserving and safeguarding the public health, and section 13 of article 2 of the constitution has no application. *Wilson* v. *Trustees,* 113

Ill. 443; 22 Am. & Eng. Ency. of Law, (2d ed.) 922, 938; Tiedeman on Police Power, 444, 445; *Chicago* v. *Netcher,* 183 Ill. 104; *Stone* v. *Mississippi,* 101 U. S. 814; *In re Cheesebrough,* 78 N. Y. 232; *Brown* v. *Keener,* 74 N. C. 714; *State* v. *Wheeler,* 44 N. J. L. 88; *Frazer* v. *Chicago,* 186 Ill. 480; *Bancroft* v. *Cambridge,* 126 Mass. 438; *Munn* v. *Illinois,* 94 U. S. 113; *Beer Co.* v. *Massachusetts,* 97 id. 25; *Frost* v. *People,* 193 Ill. 635.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Appellants are the owners of sixty-six lots, all of which they claim were damaged by the act of the Sanitary District of Chicago in lowering the general level of the water in the south branch of the Chicago river. Seven of these lots front or abut on this branch of the river. The others front on canals, leading from the south branch at right angles to the general course of the stream. It is contended by appellee that appellants have no riparian rights appurtenant to those lots which do not abut on the river, and this presents the first question for our determination.

At the time the canals were excavated, the real estate through which they extend was all property of one owner. More than twenty years intervened the construction of the canals and the opening of the principal channel of the sanitary district, the opening of which reduced the level of the water. After the canals were opened the owner of the land subdivided the same into lots facing or abutting upon the canals, except a few immediately contiguous to and fronting upon the river. These lots the owner sold from time to time without any reservation.

Under the law of this State, the owner of lots on each side of a river, such as the Chicago river, is also the owner of the bed of the stream to the center of the stream; (*Mc-Cartney* v. *Chicago and Evanston Railroad Co.* 112 Ill. 611;) subject only to the right of the public to the free and undisturbed navigation of the river. (*Chicago and Pacific Railroad Co.* v. *Stein,* 75 Ill. 41.) A riparian owner has the right

to use the water in the stream. This includes the right to take a reasonable quantity of the water for his own purposes. The limitation and extent of the use of the water is, that it shall not interfere with the public right of navigation nor in a substantial degree diminish and impair the right of use of the water by other riparian owners. *Washington Ice Co.* v. *Shortall,* 101 Ill. 46.

These canals had been continuously supplied with water for more than twenty years prior to the opening of the sanitary channel. This court has on several occasions held that the right to have water flow in an artificial channel and to flood land which it would not overflow naturally may be acquired by prescription. (*Vail* v. *Mix,* 74 Ill. 127; *Ballard* v. *Struckman,* 123 id. 636; *Totel* v. *Bonnefoy,* 123 id. 653.) In other States it has been frequently held that one who, by an artificial channel or waterway, has taken water from the original channel and who has continued to divert and enjoy it, for a period beyond the Statute of Limitations as to real actions, acquires by prescription the right to use the water in that particular manner and to continue the diversion of it in the same way. (*Murchie* v. *Gates,* 78 Me. 300; *Mathewson* v. *Hoffman,* 77 Mich. 420; *Townsend* v. *McDonald,* 12 N. Y. 381; *Weatherby* v. *Micklejohn,* 56 Wis. 73; *Cowell* v. *Thayer,* 5 Metc. 253; *Campbell* v. *Talbott,* 132 Mass. 174; *Belknap* v. *Tremble,* 3 Paige, 605; *Shepardson* v. *Perkins,* 58 N. H. 354; *Messinger's Appeal,* 109 Pa. St. 285; *City of Reading* v. *Althouse,* 93 id. 400; *Adams* v. *Manning,* 48 Conn. 477.) It is suggested by appellee that these cases all involve the relative rights of private parties and that no such right can be acquired by prescription against the public. The right of the public in this stream is the right to navigate it. No right can be acquired by prescription which will interfere with this right of navigation. It does not appear from the declaration in this case, that filling these canals with water from the river interfered in anywise with navigation. In view of the length of the canals and the amount of water necessarily required to fill them to the level of the river, the

diversion of the waters to the canals was an appropriation of the water adverse to the rights of other owners of abutting property, and as the appropriation did not violate the public right of navigation, the owner of each lot fronting upon either of these canals acquired, by prescription, the same riparian rights in the waters therein that he would have had if the canals had been natural waterways, and, under the authorities above cited, his title extended to the middle of the canal.

Section 13 of article 2 of the constitution of the State provides: "Private property shall not be taken or damaged for public use without just compensation," and the question is here presented whether the damages sustained by appellants are within this language of the constitution.

Section 19 of the act for the creation of sanitary districts provides: "Every sanitary district shall be liable for all damages to real estate within or without such district which shall be overflowed or otherwise damaged by reason of the construction enlargement or use of any channel, ditch drain, outlet or other improvement under the provisions of this act."

In the case of *City of Kewanee* v. *Otley,* 204 Ill. 402, we held, (p. 417,) referring to *Gardner* v. *Newberg,* 2 Johns. Ch. 161, and *Simons* v. *Patterson,* 48 L. R. A. 717: "It is the right of every owner of land over which a stream of water flows, to have it flow in its natural state and with its quality unaffected. The right to a stream of water is as sacred as a right to the soil over which it flows. It is a part of the freehold, of which the owner cannot be disseized except by due process of law, and the pollution of a stream constitutes the taking of property, which may not be done without compensation."

Now, if the owners of the various lots abutting on the canals in question have acquired by prescription the same right to the enjoyment of the use of the water in these canals at the ordinary level that they would have, had these canals been natural and not artificial waterways, it is apparent that it is their right to have the water flow into these canals to the

same height that it did prior to the opening of the drainage district channel.

It is urged in opposition to this view that the title of the riparian owner is subordinate to such use of the water as may be consistent with or demanded by the public right of navigation, and that the rights of the plaintiffs are subject to the paramount authority of the State to make any and all improvements to facilitate navigation; and it is argued that as section 24 of the Sanitary District act declares that the drainage channel is a navigable stream, consequently, reducing the level of the water in the Chicago river for the purpose of filling the sanitary channel was in the interest and for the purposes of navigation, and that as the rights of plaintiffs were subject to the rights of the public to make any and all improvements to facilitate navigation, the damages inflicted are not of a character for which recovery may be had.  To this there are two answers:  While it is true that the rights of the plaintiffs are subject to the public right of navigation, and that damages resulting in consequence of any work by the public for the purpose of improving navigation are damages for which no recovery can be had, still it must be manifest that the right of navigation and the right of improvement for purposes of navigation which are superior to the rights of plaintiffs must be the right to navigate the south branch of the Chicago river and to improve navigation in that branch, or some stream or lake whose waters naturally flow into that branch or into which that branch naturally flows.  Here the waters were taken and their general levels reduced for the purpose of making navigable an artificial channel, and not for the purpose of facilitating the navigation of the south branch of the Chicago river or any stream or body of water naturally emptying into it or any stream or lake into which it naturally empties.

Again, it is evident, from an examination of the act for the creation of sanitary districts, that the primary and principal purpose of their creation under the statute is to provide for the preservation of the public health by improving

the facilities for the final disposition of sewage and by supplying pure water. The fact that a navigable waterway may be created is a mere incident, and not one of the purposes for which a sanitary district is created.

Appellee cites a large number of cases in which it has been held that there can be no recovery for damages resulting from a proper exercise of the police power for preserving and safeguarding the public health, and argues that the declaration herein does not state a cause of action, as the channels of the sanitary district were constructed for the purpose last mentioned under and by virtue of the police power of the State. This doctrine is applicable where compensation is claimed for taking property, or for damaging property not taken, where the damages result from some direct physical injury to the *corpus* of the property itself, or from the fact that the law prescribes some particular manner in which the property shall be used or some particular manner in which it shall not be used, and where the character or condition of the property, whether taken, or damaged without being taken, is such that it is necessary that it should be taken or damaged for the purpose of preserving the public health, or for some other purpose which sets in motion the police power; as where a slaughter-house or a soap factory, located in a city, is abated under regulations in reference to nuisances; where the erection of buildings of combustible material is prohibited within certain limits; the seizure and destruction of intoxicating liquors under prohibitory statutes; the seizure and destruction of gambling implements and apparatus under laws authorizing that course, or where the law requires the property owners to fill open cesspools in use by them upon their property.

In the case at bar, however, there was nothing in the condition or character of the property of the plaintiffs which rendered it either necessary or desirable that it should be taken or damaged in the exercise of the police power. It is evident that lowering the level of the water obstructed ingress to and egress from the lots in question, and following

the reasoning of this court in *City of Chicago* v. *Jackson*, 196 Ill. 496, we hold that such obstruction is a damage to private property for public use, within the meaning of section 13 of article 2 of the constitution of this State, for which compensation may be recovered from the sanitary district, under and by virtue of section 19 of the act authorizing the creation of the district.

It appears from the declaration herein that when the level of the water was reduced, plaintiffs deepened the various canals passing their property so that there would be the same depth of water at their docks that there was before the opening of the sanitary district channel, and made such changes in the construction of their docks as were necessitated by deepening the canals, and they seek to measure their damages by the expense of making these excavations and changes, and contend that they cannot recover for damages to their property from acts which they permit to continue without making reasonable efforts to prevent them, and that it was their duty to make the excavations and changes and thereby lessen any damage that would be occasioned by interference with their business consequent upon the inability of vessels to land at their docks.

Where the plaintiff, by the exercise of reasonable diligence, prevents or lessens damage which his property would otherwise sustain through the negligence of another, no doubt the expenditures that he has made in so doing may be considered in ascertaining the amount of his damages; but where property has been damaged, though not taken, by a public improvement, and the damages are of such a character that recovery may be had, the measure of damages is the difference in the value of the property before the improvement was constructed and the value of the property after the improvement was completed.

"Where an action is brought to recover damages, where no part of the plaintiff's property has been taken, but merely damaged by a public improvement, the law is well settled that a recovery cannot be had unless the property claimed to

be damaged has been depreciated in value by the construction of the public improvement. In other words, if the fair market value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no damage has been sustained, and no recovery can be had." *Springer* v. *City of Chicago,* 135 Ill. 552,—citing *City of Elgin* v. *Eaton,* 83 Ill. 535; *Chicago and Pacific Railroad Co.* v. *Francis,* 70 id. 238; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Hall,* 90 id. 42; *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Haller,* 82 id. 208; *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Capps,* 67 id. 607; *Eberhart* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 id. 347; *Chicago and Alton Railroad Co.* v. *Maher,* 91 id. 312; *Chicago and Eastern Illinois Railroad Co.* v. *Loeb,* 118 id. 203; *Chicago and Pacific Railroad Co.* v. *Stein,* 75 id. 41; *Page* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 id. 324.

The defect in the declaration, arising from the fact that damages were claimed by an incorrect measure, is one which cannot be reached by a general demurrer, which is the only method by which this pleading was tested. This declaration states a good cause of action notwithstanding it does not adopt a correct measure for determining the amount of compensation to which the plaintiffs are entitled.

The judgment of the circuit court will be reversed and the cause remanded with directions to overrule the demurrer.

*Reversed and remanded.*