1816.

GARDNER
v.
VILLAGE OF
NEWBURGH.

[ * 162 ]

*GARDNER *against* THE TRUSTEES OF THE VILLAGE OF NEWBURGH, and HASBROUCK and BELKNAP.

The owner of land through which a stream of water runs has a legal right to the use of the water, of which he cannot be deprived without his consent, or a just compensation.

This Court has a concurrent jurisdiction with Courts of law, in a case of private nuisance by diverting or obstructing an ancient water course, and may issue an injunction to prevent the interruption, though the plaintiff has not established his title at law.

Though the legislature has power to take private property for useful and necessary public purposes, it is bound to provide a fair compensation to the individual whose property is taken, and until a just indemnity is afforded to the party, the power cannot be legally exercised.

Where an act of the legislature authorized the trustees of a village to supply it with water, by means of conduits, and, for that purpose, to enter on the lands of other persons, to make reservoirs, and lay conduits, &c., and provide compensation for the owners of such land, and also for the owner of the land on which the spring or source from which the water was to be conducted was situated, but· made no provision for indemnifying the owners of lands through which the stream flowed, and, from such spring, had run, from time immemorial, for the injury they must suffer by diverting the course of the stream from their farms; the Court granted an injunction to prevent any proceeding to divert the stream until provision was made for a just compensation to the persons who might be injured by diverting the water.

*August* 22d.

THE bill, which was for an injunction, stated, that the plaintiff is owner of a farm in the village of *Newburgh*, through which a stream of water has, from time immemorial, run, having its source from a spring in the adjoining farm of the defendant *Hasbrouck*, and after entering the plaintiff's land, continues its whole course through his farm, until it empties into the *Hudson* river. That this stream greatly fertilizes his fields, and, running near his house, serves for watering his cattle, and for various domestic and economical purposes. That it supplies water to a brick yard on the farm
130

of the plaintiff, where most of the bricks used in *Newburgh* are made; it also supplies a large distillery erected by him at great expense, and a *churning mill, and water for a mill-seat, where the plaintiff is about to erect a mill for grinding plaster of paris. That the trustees of the village of *New-burgh*, the defendants, by false representations, obtained an act of the legislature, passed the 27th *March*, 1809,† to enable the said trustees to supply the inhabitants of the village with pure and wholesome water. That the trustees applied to the plaintiff for leave to divert the stream, offering him a trifling and very inadequate compensation, which he refused. That the said trustees having obtained leave from the defendant *Hasbrouck*, the owner of the spring, to use and divert the water, or a part thereof, that is, a stream one inch and a quarter in diameter, taken from a great elevation, have commenced a conduit, and threaten to divert the stream, or a great part thereof, from the plaintiff's farm. That the plaintiff is apprehensive that if this is done, there will not, in a dry season, be water sufficient even for his cattle, &c. The plaintiff, therefore, prayed an injunction to prevent the defendants from diverting the water, &c. The bill was sworn to, and the plaintiff produced several affidavits, which stated that the stream was not more than sufficient for the distillery, brick yard, &c., of the plaintiff, and if diverted through a pipe, or tube, of the proposed diameter, would greatly injure if not render the works useless. One of the affidavits stated, that the whole stream would pass through a tube of one inch diameter, with a head of five feet.

*Burr,* and *J. V. N. Yates,* for the plaintiff.

The Chancellor. The statute under which the trustees of the village of *Newburgh* are proceeding, (sess. 32. ch. 119.) makes adequate provision for the party injured by the laying of the conduits through his land, and also affords security to the owner of the spring or springs from whence the water is to be taken. But there is no provision *for making compensation to the plaintiff, through whose land the water issuing from the spring has been accustomed to flow. The bill charges, that the trustees are preparing to divert from the plaintiff's land, the whole, or the most part of the stream, for the purpose of supplying the village. The plaintiff's right to the use of the water, is as valid in law, and as useful to him, as the rights of others who are indemnified or protected by the statute; and he ought not to be deprived of it, and we cannot suppose it was intended he should be deprived of it, without his consent, or without making him a just compensation. The act is, unintentionally, defective,

---

1816.

Gardner
v.
Village of
Newburgh.

[ *163 ]

† Sess. 32. ch.
119. Vol. 5.
*Webst.* ed. 489.

[ * 164 ]

131

1816.

GARDNER
v.
VILLAGE OF
NEWBURGH.

The owner of land is entitled to the use of a stream of water that has run through it from time immemorial.

Chancery has concurrent jurisdiction with Courts of law in cases of private nuisance.

[ *165 ]

This Court may issue an injunction to prevent the obstruction of an ancient water course, though the plaintiff has not established his title at law.

in not providing for his case, and it ought not to be enforced, and it was not intended to be enforced, until such provision should be made.

It is a clear principle in law, that the owner of land is entitled to the use of a stream of water which has been accustomed, from time immemorial, to flow through it, and the law gives him ample remedy for the violation of this right. To divert or obstruct a water course is a private nuisance; and the books are full of cases and decisions asserting the right and affording the remedy. (*F. N. B.* 184. *Moore* v. *Browne, Dyer,* 319. *b. Lutterel's* case, 4 *Co.* 86. *Glynne* v. *Nichols, Comb.* 43. 2 *Show.* 507. *Prickman* v. *Trip, Comb.* 231.)

The Court of Chancery has also a concurrent jurisdiction, by injunction, equally clear and well established, in these cases of private nuisance. Without noticing nuisances arising from other causes, we have many cases of the application of equity powers on this very subject of diverting streams. In *Finch* v. *Resbridger,* (2 *Vern.* 390.) the lord keeper held, that after a long enjoyment of a water course running to a house and garden, through the ground of another, a right was to be presumed, unless disproved by the other side, and the plaintiff was quieted in his enjoyment, by injunction. So, again, in *Bush* v. *Western,* (*Prec. in Ch.* 530.) a plaintiff who had been in possession, *for a long time, of a water course, was quieted by injunction, against the interruption of the defendant, who had diverted it, though the plaintiff had not established his right at law, and the Court said such bills were usual. These cases show the ancient and established jurisdiction of this Court; and the foundation of that jurisdiction is the necessity of a preventive remedy when great and immediate mischief, or material injury, would arise to the comfort and useful enjoyment of property. The interference rests on the principle of a clear and certain right to the enjoyment of the subject in question, and an injurious interruption of that right, which, upon just and equitable grounds, ought to be prevented. (*Anon.* 1 *Vern.* 120. *East India Company* v. *Sandys,* 1 *Vern.* 127. *Hills* v. *University of Oxford,* 1 *Vern.* 275. *Anon.* 1 *Vesey,* 476. *Anon.* 2 *Vesey,* 414. *Whitchurch* v. *Hide,* 2 *Atk.* 391. 2 *Vesey,* 453. *Attorney-General* v. *Nichol,* 16 *Vesey,* 338.)

In the application of the general doctrines of the Court to this case, it appears to me to be proper and necessary that the preventive remedy be applied. There is no need, from what at present appears, of sending the plaintiff to law to have his title first established. His right to the use of the stream is one which has been immemorially enjoyed, and of which he is now in the actual possession. The trustees set

132

up no other right to the stream (assuming, for the present, the charges in the bill) than what is derived from the authority of the statute; and if they are suffered to proceed and divert the stream, or the most essential part of it, the plaintiff would receive immediate and great injury, by the suspension of all those works on his land which are set in operation by the water. In addition to this, he will lose the comfort and use of the stream for farming and domestic purposes; and, besides, it must be painful to any one to be deprived, at once, of the enjoyment of a stream which he has been accustomed always to see flowing by the door of his dwelling. A right *to a stream of water is as sacred as a right to the soil over which it flows. It is a part of the freehold, of which no man can be disseised " but by lawful judgment of his peers, or by due process of law." This is an ancient and fundamental maxim of common right to be found `in *Magna Charta*, and which the legislature has incorporated into an act declaratory of the rights of the citizens of this state. (*Laws*, sess. 10. ch. 1.)

I have intimated that the statute does not deprive the plaintiff of the use of the stream, until recompense be made. He would be entitled to his action at law for the interruption of his right, and all his remedies at law, and in this Court, remain equally in force. But I am not to be understood as denying a competent power in the legislature to take private property for necessary or useful *public* purposes; and, perhaps, even for the purposes specified in the act on which this case arises. But to render the exercise of the power valid, a fair compensation must, in all cases, be previously made to the individuals affected, under some equitable assessment to be provided by law. This is a necessary qualification accompanying the exercise of legislative power, in taking private property for public uses; the limitation is admitted by the soundest authorities, and is adopted by all temperate and civilized governments, from a deep and universal sense of its justice.

*Grotius*, (*De Jur. B. & P.* b. 8. ch. 14. s. 7.) *Puffendorf*, (*De Jur. Nat. et Gent.* b. 8. ch. 5. s. 7.) and *Bynkershoeck*, (*Quæst. Jur. Pub.* b. 2. ch. 15.) when speaking of the *eminent domain* of the sovereign, admit that private property may be taken for public uses, when public necessity or utility require it; but they all lay it down as a clear principle of natural equity, that the individual, whose property is thus sacrificed, must be indemnified. The last of those jurists insists, that private property cannot be taken, on any terms, without consent of the owner, *for purposes of public ornament or pleasure; and he mentions an instance in which the *Roman* senate refused to allow the prætors to carry an aque-

*1816.*

GARDNER
v.
VILLAGE OF
NEWBURGH.

[ * 166 ]

The legislature cannot take private property, without providing a fair compensation to the individual.

[ * 167 ]

duct through the farm of an individual, against his consent, when intended merely for ornament. The sense and practice of the *English* government are equally explicit on this point. Private property cannot be violated in any case, or by any set of men, or for any public purpose, without the interposition of the legislature. And how does the legislature interpose and compel? "Not," says *Blackstone*, (*Com.* vol. 1. p. 139.) "by absolutely stripping the subject of his property, in an arbitrary manner, but by giving him a full indemnification and equivalent for the injury thereby sustained. The public is now considered as an individual treating with an individual for an exchange. All that the legislature does is to oblige the owner to alienate his possessions for a reasonable price; and even this is an exertion of power which the legislature indulges with caution, and which nothing but the legislature can perform."

I may go further, and show that this inviolability of private property, even as it respects the acts and the wants of the state, *unless a just indemnity be afforded,* has excited so much interest, and been deemed of such importance, that it has frequently been made the subject of an express and fundamental article of right in the constitution of government. Such an article is to be seen in the bill of rights annexed to the constitutions of the states of *Pennsylvania, Delaware,* and *Ohio;* and it has been incorporated in some of the written constitutions adopted in *Europe,* (Constitutional charter of *Lewis* XVIII., and the ephemeral, but very elaborately drawn, constitution *de la Republique Française* of 1795.) But what is of higher authority, and is absolutely decisive of the sense of the people of this country, it is made a part of the constitution of the *United States,* "that private property shall not be taken for public use, without just compensation." I feel myself, therefore, not only authorized, *but bound to conclude, that a provision for compensation is an indispensable attendant on the due and constitutional exercise of the power of depriving an individual of his property; and I am persuaded that the legislature never intended, by the act in question, to violate or interfere with this great and sacred principle of private right. This is evident from the care which this act bestows on the rights of the owners of the spring, and of the lands through which the conduits are to pass. These are the only cases in which the legislature contemplated or intended that the act could or should interfere with private right, and in these cases due provision is made for its protection, or for compensation. There is no reason why the rights of the plaintiff should not have the same protection as the rights of his neighbors; and the necessity of a provision for his case could not have occurred, or it, doubtless, would

have been inserted. Until, then, some provision be made for affording him compensation, it would be unjust, and contrary to the first principles of government, and equally contrary to the intention of this statute, to take from the plaintiff his undoubted and prescriptive right to the use and enjoyment of the stream of water.

In the case of *Agar* v. *The Regents' Canal Company*, (*Cooper's Eq. Rep.* 77.) an injunction was granted, on filing a bill supported by affidavit, restraining defendants acting under a private act of parliament, from cutting a canal through the land of the plaintiff, in a line and mode not supposed to be within the authority of the statute.

I shall, accordingly, upon the facts charged in the bill, and supported by affidavits, as a measure immediately necessary to prevent impending injury, allow the injunction, and wait for the answer, to see whether the merits of the case will be varied.

Injunction granted.