Carr, J.
If the dam in this case, be considered as a private nuisance, it is well settled, that a court of equity will, under circumstances interfere by injunction to arrest it, upon the general concurrent jurisdiction which it exercises in such cases. And if it be said, that this dam cannot be taken as a nuisance, because it was built by leave of court •founded on an express statute (a point which I do not think it necessary to decide) yet, I think, the interference of the court may be justified, on the ground of preventing irreparable mischief. Many cases might be cited to shew, that the *573 courts of equity are in the constant practice of granting in- . . , . ,. -r i i . junctions to prevent the destruction ot specilic chattels, not properly the subject of compensation ; and the principle will surely apply, a multo fortiori, to cases in which the interference of the court is necessary to prevent the destruction of health and life. It is true, this is one of those extraordinary powers of the court, which should be exercised with great caution, and only in clear and strong cases. But this is such a case. [Here the judge stated the evidence in the causes, and shewed that the allegations of the bill were incontestibly proved.] If this be not a case, not merely justifying, but calling for the preventive justice of the court, I cannot conceive one that would.
But it was said, that whatever might be the power of the court on general principles, our statute regulating the building of mills, has taken it away in this case: that that has prescribed the course to be pursued by one wishing to establish a mill; be must have a jury of inquest; they must report, that the health of the neighbours will not be injured ; all parties concerned may contest this report; the court must weigh all the circumstances; and in its sound discretion, give or withhold the leave asked. And it was strenuously insisted, that when, with all these precautions, and under the sanction of the law, a party went on to erect his mill, and invest perhaps his whole property in it, no court of equity could revoke his license, and thus destroy his property : and this was considered as more strongly proved by that clause of the statute, which authorizes the owner of a mill destroyed by any accident to rebuild it, without any order of court, provided he begins in one year and finishes in three. It must be admitted, that when a man has thus acquired a property valuable to himself, and acknowledged by the law as of public benefit, it is a high and strong handed measure to interfere with it; but that it can under no possible circumstances be touched, is a proposition to which I can by no means assent. And it seems to me, that the general principles governing the interference of courts *574 on su^ject5 so frr from being abrogated, or even weakened, are strengthened and enlarged, by the cautious and , benign policy of the statute. A glance at its provisions will shew how exceedingly careful it has been of the health of the citizen. The jury is directed to inquire and report, whether in its opinion, the health of the neighbours will be annoyed by the stagnation of the waters. If the jury reports that no such annoyance will take place, any person may contest the truth of the statement, and produce evidence before the court; and if upon this evidence, the court shall think that the jury is wrong, it will refuse leave to erect the mill; if on the contrary, the jury reports that the health of any part of the neighbours will in its opinion, be affected, or will probably be affected (Mayo v. Turner, 1 Munf. 405.) this is conclusive: no evidence can be adduced to controvert it; for the law says, that in such case, the court shall not give leave to build the mill, and erect the dam. Again, notwithstanding all these precautions, it occurred to the law makers, that the jury might be mistaken, or something omitted; and they added, that no inquest taken by virtue of the statute, and no opinion or judgement of the court thereupon, shall bar any public prosecution, or’ private action, which could have been had or maintained if this statute had never been made, other than prosecutions, and actions for such injuries as were actually foreseen and estimated upon the inquest; that is, in effect, that as to all injuries not actually foreseen and estimated, the subject shall remain as if the statute had never been made. Now, it must be admitted by all, that the annoyance to the health of the plaintiff’s family, which has followed the building of the mill, and which all the witnesses, and a jury sworn between the parties, say, was caused, by the stagnation of the waters in the mill pond was not foreseen or estimated upon the inquest: estimated it could not be, for though the law allows other injuries to be estimated, and the party to be compensated for them, it attempts no such vain and cruel thing with respect to health. If the *575 jury finds, that fish of passage, or ordinary navigation &c. may be obstructed, it may inquire how these obstructions can be removed, and the court, in granting leave, will take care to lay the party applying under proper conditions for preventing such inconveniences. But not so with regard to the health of the neighbours : if, in the opinion of the jury, that will be annoyed by the stagnation of the waters, it is not at liberty to inquire into the means of removing or preventing this inconvenience; nor is the court authorized to grant leave, in such cases, laying the party under conditions to do this or that, which it may think would be effectual to prevent the annoyance. The law tolerates no such experiments, made at the risk of human life.
It was said the savings of the statute did not comprehend this equitable interference, as they extend only to public prosecutions and private actions. I consider the true meaning of the statute to be this: that as to injuries not foreseen by the jury, the party shall have every remedy, which he would have had, if the statute had never been made. It has been seen, that the statute placed health above every other thing: it is admitted, that for injury to health, the permission to build the mill does not bar an action ; and this case presents the fact, that for such injury a jury has given damages. If the dam were again erected, for the sickness and deaths of every summer, an action would accrue to the plaintiff: but would these damages redress his injuries? We see, that from 1815 to 1823, he lost four of his family, a son among them, from the effects of the pond, as the physicians think and depose. How many he might lose annually, if the dam were rebuilt, we cannot say; but this we may assume, that for the loss of a child or wife, no damages could compensate him, could place him where he stood.
The case, then, in every point of view, was one, I think, strongly calling for the preventive justice of the court. The injunction was properly allowed. It is equally clear to me, that the chancellor erred in dissolving it, simply upon the answer of the defendants, saying that they meant to cut down the trees, and clear up the rubbish in the pond. It is one *576 of those very experiments, involving life, which the law will not permit. And as to saying that the defendants would make this experiment at their own peril, it is not true : they would make it at the peril of the plaintiff, because they could not restore to him any member of his family, who might fail a sacrifice to it.
I think, then, that the decree should be reversed, the cause sent back, and the injunction reinstated.
Tucker, P. However difficult it may be to ascertain the causes of those diseases which are usually attributed to malaria, and however conflicting the opinions of the learned have been upon the subject, it must be admitted, that the evidence in this case has established, as far as evidence can establish it, that the health of the plaintiff’s family was grievously annoyed and impaired by the mill dam of the appellees. This fact is put beyond question by the verdict between the parties, which, as between them is intirely conclusive ; so much so, indeed, that if the dam were still in exactly the same situation as before, the verdict would be conclusive, in a second action for further damages, of the fact of nuisance. Unless, therefore, the evidence should establish, satisfactorily, that the removal of decayed timber, and other precautions, will prevent the recurrence of like evils, in case the dam be rebuilt, there can be no question, that the appellant will be entitled to new actions against the appellees for the purpose of abating this formidable nuisance. For the statute, in authorizing the establishment of mills, scrupulously guards against the erection of them, when the health of the neighbourhood might be annoyed thereby. It requires the jury to respond to that inquiry, and it prohibits the leave to build a mill where the health of the surrounding population will be endangered. Nay more; lest the jury might not anticipate such a consequence, it expressly provides, that no inquest under a writ of ad quod damnum, and no opinion or judgement of the court thereupon, shall bar any public prosecution or private action, which could have been had or maintained, other than pro *577 seditions and actions for such injuries as were actually fore- , . . . j. r . . seen and estimated upon such inquest, if, then, the rebuilding of the dam should renew the nuisance, the right of public prosecution and of private action will be in full force.
The private action which is thus reserved to the party, may be either an action on the case, or a writ quod permit-tat prosternere; the last of which does not merely give damages, as a satisfaction for a past injury, but also strikes at the root of the evil, by removing the cause of the mischief itself. 3 Blacks. Comm. 220. ft is, indeed, no longer in use; because the action on the case has been made to sub-serve all its purposes, by the course of practice established by the courts. For, though the verdict of the jury in the first action, gives to the plaintiff only a just satisfaction for the injury he has sustained ; yet every continuance of a nuisance is held to be a fresh one, “ and very exemplary damages will be given,” says .Blaclestone, “ if after one verdict against him, the defendant shall have the hardihood to continue it.”
Thus, it is clear, the party injured has a right to have the nuisance abated; and that that object may be pursued by repeated actions on the case, until it is accomplished ; or the party may resort at once to the disused, yet still legal remedy of the writ quod permittat prosternere.
I am also inclined to think, from the evidence in the case, that the mill dam, as it existed, was a public nuisance, and might have been abated by a public prosecution, although a private action might also be sustained by the individual who had suffered special injury from the erection of it. 5 Bac. Abr. Nuisances. B. p. 151. Regina v. Wigg, 2 Ld. Raym. 1163. Dimmett v. Eskridge, 6 Munf. 308.
Admitting, then, that the rebuilding of the dam will renew the nuisance, it is perfectly obvious, that the appellant, by one or other legal remedy, will have a right to have it abated. And this being so, can there be a doubt, that a court of equity possesses the power, by injunction, to prevent a party from building up a dam, which his adversary would instantly *578 have a right to make him pull down, though irreparable injury to the health or the life of the plaintiff or the members of his family, might be done, before that object could be effected ? I think not. The jurisdiction, though confessedly one of much delicacy, is nevertheless unquestionable, where the right is dear, the danger imminent, and the injury irreparable. Mayor of London v. Bolt, 5 Ves. 129. Crockford v. Alexander, 15 Id. 138. Twort v. Twort, 16 Id. 128. Attorney General v. Nichol, Id. 341. Crowder v. Tinkler, 19 Id. 617. Crenshaw v. Slate River Co. 6 Rand. 245. Gardner v. Newburgh, 2 Johns. Ch. Rep. 164. 1 Madd. Ch. Prac. 155.
From this view of the subject, I think it obvious, that the whole case turns upon the question whether the rebuilding of the dam will renew the nuisance. I am inclined to think it will, but as the appellees have expended possibly large sums in the erection of their mill, it was proper that the chancellor should have had that fact ascertained, as far at least as it is practicable to do so. On the one hand, the injunction ought not to have been perpetuated, without the institution of a previous inquiry, whether by the means already adopted by the appellees, or by some other means, the danger of injury to the health of the neighbourhood could not be obviated. On the other, the injunction ought not to have been dissolved, and the appellees permitted to proceed at their own risk, before it was ascertained that there would be no probable risk to the appellant.
Therefore, I think the decree of the chancellor is erroneous, and that it should be reversed, and the cause sent back, with instructions to direct an issue to ascertain, whether the health of the appellant or his family will be annoyed by the stagnation of the water, in the event of the dam being rebuilt.