3:31 LRA 111

THE VILLAGE OF DWIGHT

*v.*

JOHN A. HAYES.

*Filed at Ottawa May 8, 1894.*

150   273
159   391
150   273
158   28
150   273
174   622
150   273
f95a  1528
150   273
204   4412
204   6413
150   273
211   6277
150   273
f113a 6577

1. NUISANCE—*pollution of a stream—preventing by injunction.* A court of equity has jurisdiction to prevent the pollution of the water in a stream by emptying the sewage of a city therein, whereby the water will be rendered unwholesome and unfit for use, and a private nuisance will be created in the premises of a land owner over which the stream flows.

2. Where such a nuisance is shown, though causing inconsiderable damage, a court of equity will enjoin its continuance; and in deciding upon the right of a proprietor to an injunction against the creation of such a nuisance, the court will not consider the convenience of the public. The fact that a large population will be affected by the interruption of the use of a system of sewers, is immaterial, where the rights of an individual owner are affected.

3. The fact that the creek into which the sewage of a city is proposed to be emptied by a system of sewers, near the farm of the complainant, is not a running stream during all portions of the year, but during very dry weather contains only small pools or ponds of water standing in the deeper parts of its channel, will only serve to aggravate the nuisance when the complainant's land is situated but a little distance from the proposed point for the discharge of the sewage, and is crossed over by the creek.

4. SAME—*enjoining—before the right is established at law.* It is a general rule, formerly strictly enforced, that before a court of equity would interfere to restrain a private nuisance, the complainant must establish his right in a court of law. But this rule has been somewhat relaxed in modern times, and when a case is clear, so as to be free from substantial doubt as to the right to relief, and it is evident that a nuisance *per se* is sought to be created, equitable relief will be granted without first resorting to an action at law.

5. Where the discharge of the sewage of a village into a creek pollutes and corrupts the waters of the stream as it flows across a party's land, and thereby creates a nuisance *per se,* and there is no doubt of such party's rights, he will be entitled to an injunction restraining the creation of the threatened nuisance.

6. EASEMENT—*how created—parol license—revocation.* The right of a village to pollute the waters of a creek by discharging sewage into

18—150 ILL.

it, is in the nature of an easement, which can be created only by grant or prescription; and a mere oral consent to such pollution of the stream will vest in the village no right not in the power of the party giving the consent, at any time to revoke. Nor will the fact that the village has expended money or incurred liability on the faith of such parol license, present any obstacle to such revocation.

7.    OFFER OF SETTLEMENT—*as evidence of amount of claim.* A party whose personal or property rights are threatened with irreparable injury, may offer to accept a specified sum of money as a full compensation for the threatened injury; but such offer, when rejected, will have no tendency, as against the party making it, to show the amount or nature of his damages.

8.    The law favors offers of settlement, and will not permit them afterward to be used to the prejudice of the party who makes them. So the offer of a land owner to accept a certain sum for the privilege of emptying a sewer into a stream flowing over his land, and thereby polluting the water, when rejected by the other party, can not be resorted to for the purpose of showing that the damages to such owner and his property, which would result from discharging the sewage of a village into the creek, may be adequately remedied by a judgment at law.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Livingston county; the Hon. C. R. STARR, Judge, presiding.

Messrs. MAYO & WIDMER, Mr. GEORGE W. PATTON, and Mr. R. S. McILDUFF, for the appellant.

Messrs. REEVES & BOYS, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by John A. Hayes against the Village of Dwight, to restrain the village from constructing a system of sewers, so that the same will discharge the sewage of the village into Gooseberry creek, a stream of water running through the complainant's land. The complainant owns and resides on a farm, containing about 212 acres, situate in Grundy county, and adjoining the south line of the county. The village of Dwight is an incorporated village, having a population of about 1600, and situated in

Livingston county, and about a mile or a mile and a half south of the south line of Grundy county. ' Gooseberry creek has its head-waters several miles south of Dwight in two separate branches, one of which runs through the village, the two forming a junction about a half mile below on the land of David McWilliams, and running thence in a northerly direction across the complainant's land, which adjoins that of McWilliams on the north, and emptying into Mazon creek.

Gooseberry creek, as the evidence shows, is a stream in which water constantly flows, except during certain portions of the dry weather in summer, and during that time, it contains pools of water at different places along its channel, sufficient in quantity and of sufficient purity to furnish drink for cattle and other domestic animals kept by the owners of the lands through which it flows. The complainant, as it appears, occupies and uses his land as a stock farm, and has been accustomed, for many years, to use the creek for watering his stock, and he has also been accustomed, during the winter season, to take from it his supply of ice for use during the summer.

In the summer of 1892, the village of Dwight commenced the construction of a system of sewers which were to be so constructed as to discharge the sewage of the village into Gooseberry creek at a point on the land of McWilliams, a short distance below the confluence of the two branches of the creek. The complainant thereupon filed his bill to restrain the village from discharging the sewage from its proposed system of sewers into the creek, alleging that there was a constant supply of living water in the creek, sufficiently pure and good for stock; that the complainant was using his farm as a stock farm, and relied upon the waters of the creek for the purposes of watering his stock, and that he cut ice therefrom and stored the same at his residence for the use of his family, and that the discharge of the sewage into the creek would render the water thereof unfit for the domestic uses above referred to, and would also cause noxious odors to spread over the complain-

ant's farm and about his place of residence, thereby rendering the same unhealthful and uncomfortable as a place in which to live, and so, would cause irreparable damage to the complainant's premises and place of residence, and would create a nuisance.

On the filing of the bill, an injunction *pendente lite* was awarded as prayed for, and an answer and replication having been afterwards filed, the cause was heard on pleadings and proofs, and at such hearing a decree was entered by the Circuit Court, dismissing the bill at the complainant's costs for want of equity, but without prejudice to the complainant's right to prosecute an action at law. On appeal by the complainant to the Appellate Court, the decree was reversed and the cause remanded with directions to the Circuit Court to enter a decree in favor of the complainant making the injunction perpetual. From the judgment of reversal, the village of Dwight now appeals to this court.

A large number of witnesses were examined, and the testimony in the record is very voluminous and to a very considerable degree conflicting. Among other things, the opinions of many witnesses were taken as to what would be the probable effects upon the waters of the creek, as they flow across the complainant's land, and upon the surrounding atmosphere, of discharging the sewage of the village into the creek a short distance above his premises. While some of these witnesses seem to be of the opinion that no serious pollution of the water would result, and no nuisance be created, we concur in the opinion of the Appellate Court that the decided preponderance of the evidence sustains the conclusion that the water would thereby become so polluted as to render it unfit for domestic use, or for the drink of domestic animals. And this view is strongly reinforced by the inherent probabilities of the case.

Such being the case, there can be no doubt, as it seems to us, as to the right of the complainant to relief in equity. As

said by Mr. High, in his Treatise on Injunctions, sec. 810 : "Frequent ground of application for the preventive aid of equity is found in cases of the pollution of water by the flow of sewage from towns or cities into streams whose waters are thereby injured and rendered unfit for use. In cases of this nature, the preventive jurisdiction of equity is well established, the general doctrine being, that the fouling or pollution of water in a stream by such sewage constitutes a nuisance and affords sufficient ground for relief by injunction. In conformity with this doctrine, the owners of land upon the banks of a river below a city may enjoin the city authorities from polluting the river by sewage."

In Gould on Waters, sec. 546, the rule is laid down as follows : "An authority over sewage is not an authority to commit a nuisance. An owner of land upon a stream below a city is entitled to an injunction against injury by the outflow of sewage. So an injunction will lie to prevent the opening of additional sewers into a stream in such a manner as to render the water unfit for use, and it is not a defense that the city can lawfully enter upon the premises of those who use the sewer for the purpose of abating the nuisance. And if a few householders upon the stream have used it as a drain, a modern board can not found a prescriptive right to corrupt the stream upon such usage. If any nuisance of this kind be shown, though causing inconsiderable damage, equity will enjoin its continuance. In deciding upon the right of a proprietor to an injunction against such a nuisance, the court will not consider the convenience of the public. The fact that a large population will be affected by an interruption of the use of the system of sewers is immaterial, where the rights of an individual are invaded." See also, Wood on Nuisances, sec. 683, *et seq.* See also, *Dierks* v. *Commissioners of Highways*, 142 Ill. 197.

It is true the creek in question is not a running stream during all portions of the year, but during very dry weather contains only small pools or ponds of water standing in the deeper

places along its channel. But this fact manifestly would only tend to aggravate the nuisance, especially in those places situated, as is the complainant's land, but a little distance from the proposed point for the discharge of the sewage. The necessary result would be, that in the hot and dry weather of summer, the offensive substances discharged from the sewer would accumulate and remain at or near the point of discharge, not only defiling and polluting the pools of water standing in that portion of the channel, but emitting noxious vapors, corrupting and poisoning the atmosphere in that vicinity.

The decree of the Circuit Court dismissing the bill is sought to be sustained on the ground that before the complainant is entitled to an injunction, he must bring his suit at law and have his right determined by a jury. While it is a general rule, and one which was formerly enforced with very considerable strictness, that, before a court of equity will interfere by injunction to restrain a private nuisance, the complainant must establish his right in a court of law, that rule has in modern times been somewhat relaxed. In *Oswald* v. *Wolf*, 129 Ill. 200, in discussing this branch of equity jurisdiction, we said: "Even this power was formerly exercised very sparingly and only in extreme cases, at least until after the right and question of nuisance had been settled at law. While in modern times the strictness of this rule has been somewhat relaxed, there is still a substantial agreement among the authorities, that to entitle a party to equitable relief before resorting to a court of law, his case must be clear, so as to be free from all substantial doubt as to his right to relief."

We are disposed to think that the complainant's case is one which, within the rule as thus laid down, entitles him to an injunction, without having first established his right at law. None of the substantial facts upon which his right rests are controverted. His title to and possession of the land across which the creek in question runs, and the intention of the village to construct its system of sewers and discharge its sewage

into the creek a few rods above his land, are admitted. It is true, some witnesses are produced who express the opinion that the proposed discharge of the sewage of the village into this stream will not have the effect of materially polluting the water in the creek, but in our judgment, little weight is to be given to the testimony of witnesses who attempt to swear contrary to known and established natural laws. That the sewage of a village of 1600 inhabitants discharged into a small stream, will materially pollute the water of the stream and render it unfit for domestic use, for at least a few rods below the point of discharge, is a proposition too plain, and too thoroughly verified by ordinary experience and observation, to admit of reasonable doubt. That such disposition by the village of its sewage will create and constitute a nuisance *per se*, is a proposition too plain for serious question.

The case of *Wahle* v. *Reinbach*, 76 Ill. 322, was a bill in equity for an injunction to restrain a threatened nuisance, the nuisance consisting of constructing a privy on a lot adjoining that of the complainant, within eight feet of the complainant's dwelling house and cellar, and within twenty feet of the well from which the complainant and his family were supplied with water for drinking, cooking and other domestic purposes. It was urged by the defendant that, before an injunction could issue in a case of that character, it was necessary that it should be previously determined by a jury in a trial at law that a nuisance in fact existed. This contention was overruled, the court citing in support of its judgment, among various other authorities, the following passage from Kerr on Injunctions: "The court will not, in general, interfere until an actual nuisance has been committed; but it may, by virtue of its jurisdiction to restrain acts which, when completed, will result in a ground of action, interfere before any actual nuisance has been committed, where it is satisfied that the act complained of will inevitably result in a nuisance." It was accordingly held that a privy so constructed and located as to corrupt the

water of a well used for domestic purposes, or so near the complainant's dwelling house as to annoy him in the proper enjoyment of his property, constituted a nuisance *per se*, and that no preliminary declaration of that fact by a jury was necessary to give a court of equity jurisdiction.

We are satisfied that the same rule should be applied here. The discharge of the sewage of the village into the creek, thereby corrupting the waters of the stream as it flows across the complainant's land, would create a nuisance *per se*, and the complainant was therefore clearly entitled to an injunction restraining the creation of such threatened nuisance.

But it is contended that the complainant gave his consent to the construction of the proposed system of sewers, and to the discharge of the sewage of the village into the creek, and that he thereby estopped himself from any right to the relief now prayed for. The evidence shows that, when the construction of the proposed system of sewers was in contemplation, a public meeting of the citizens of the village of Dwight was called by the municipal authorities, to consider the advisability of constructing the proposed sewers, and that the complainant was one of those who attended the meeting. It also appears that during the meeting, his views were called for, and that he thereupon made a few remarks in which, as is claimed, he expressed his approbation of the enterprise, and his willingness that the sewers should be so constructed as to discharge the sewage into the creek. He testifies, on the other hand, that he at the time supposed that the sewer under consideration was merely a sewer to convey off the sewage from the buildings of the Keeley Institute, and not a general system of sewers for the entire village, and that whatever he may have said had reference solely to that one sewer, and that he did not intend to be understood as consenting to a discharge into the creek of all the sewage of the village, and there are some circumstances corroborative of the complainant's account of the matter.

How far, if at all, the subsequent action of the village authorities was taken in reliance upon what was said by the complainant at this meeting does not appear, but the evidence shows that they subsequently caused plans and specifications of the proposed system of sewers to be prepared at considerable expense, adopted the necessary ordinance providing for its construction, and entered into a contract with certain parties to construct the sewers at a stipulated price. It also appears that the contractors, after the execution of the contract, commenced its performance, by placing on the ground considerable quantities of brick and tile for the sewers. After this was done, the authorities of the village applied to the complainant for a deed granting to them the right to discharge the sewage into the creek but that the complainant refused to give, and it is conceded that he then or thereafter revoked any oral license which he may have given to the village to discharge its sewage in that manner.

The most that can be said of the complainant's consent to the proposed system of sewers, if he in fact gave such consent, is, that it was a mere oral license which was revocable at any time by the licensor. The right to pollute the waters of the creek by discharging the sewage into it was in the nature of an easement, which could be created only by grant or prescription, and a mere oral consent to such pollution of the stream vested in the village no right which it was not in the power of the complainant at any time to recall. Nor did the fact that the village had expended money or incurred liabilities in the matter of constructing the sewers present any obstacle to such revocation. *St. Louis Nat. Stock Yards* v. *Wiggins Ferry Co.* 112 Ill. 384; *Woodward* v. *Seely,* 11 id. 157; Tiedeman on Real Prop. sec. 653, and cases cited in note.

So far as the village expended money or incurred liabilities in the matter of constructing the proposed sewers, it must be held to have done so with full knowledge of the fact that the complainant had in no way obligated himself to allow the

sewage to be discharged into the creek, by any binding act or instrument, and that he was at liberty at any time to recall the consent which he had orally given.    And if under these circumstances, and without seeking to obtain from him any grant of the right of way over his land, or the execution by him of any other binding obligation in the premises, the village authorities saw fit to take steps towards the construction of the sewers, they are hardly in a position to invoke the doctrine of estoppel for the purpose of precluding the complainant from the assertion of his legal or equitable rights in the premises.

It is finally insisted that the complainant has a complete and adequate remedy at law, and that relief in equity should be denied for that reason.    We do not understand counsel as denying that ordinarily, in cases of private nuisances of this character, the threatened damage is, in a legal sense, irreparable, so as to call for the interposition of equity, but it is claimed that, because the complainant, at the request of the village authorities, submitted a proposition or offer to permit the discharge of sewage into the creek upon certain specified terms, he thereby conclusively admitted that his damages were capable of admeasurement in money, and therefore capable of being completely compensated at law.    The proposition submitted was as follows:

"R. A. BUCK:                     "DWIGHT, ILL., 7/28, 1892.

"*Dear Sir*—About the sewer, will say:  That I will require the creek made straight by the Grosh house, and cleaned up through the willows below the same, and the creek fenced on both sides, three-board and two-wire fence; two bridges made across the creek; said fence and bridges to be kept in repair by the city without expense to me, and for being deprived of the use of said creek for stock watering, ice cutting, etc., consideration will be five thousand dollars ($5000).    This leaves the stench question open.                     J. A. HAYES."

This, on being submitted to the village board, was promptly rejected. We are unable to see that any such force or effect can be given to this proposition as is contended for. A party whose personal or property rights are threatened with irreparable injury, may, if he sees fit, offer to accept a specified sum of money as a full compensation for the threatened injury, but such offer, when submitted and rejected, can have no tendency, as against the party making it, to show the amount or nature of his damages. In cases of this character as in others, the law favors offers of settlement, and will not permit them afterwards to be used to the prejudice of the parties who make them. So here, the offer of settlement can not be resorted to for the purpose of showing that the damages to the plaintiff and his property which would result from discharging the sewage of the village into the creek might be adequately remedied by a judgment at law.

We concur with the Appellate Court in its conclusions, and its judgment will be affirmed.

*Judgment affirmed.*