THE CITY OF KEWANEE

*v.*

ROBERT OTLEY et al.

*Opinion filed October 26, 1903.*

1. STREAMS—*right of a riparian owner to stream is part of freehold.* The right of a riparian owner to have the stream flow through his land in its natural, unpolluted state is a part of the freehold, of which such owner cannot be deprived without due process of law; and the pollution of such stream constitutes a taking of property, which may not be done without compensation.

2. SAME—*right of a riparian owner to protection, in equity, against pollution.* Equity jurisdiction is properly invoked by a lower riparian proprietor where an upper proprietor defiles or corrupts the stream to such a degree as to materially impair its purity and prevent its use for any proper and reasonable purpose.

3. SAME—*pollution of stream is a continuing nuisance.* The pollution of a natural stream by a city through its system of sewerage is a continuing rather than a permanent nuisance, and hence recovery of a judgment at law for damages by a riparian owner is not a bar to a subsequent proceeding by him to enjoin the nuisance.

4. SAME—*fact that city is not wholly responsible for pollution is no defense.* That the pollution of a stream is due, in part, to other sources than the sewerage system of the city is no defense to a proceeding to enjoin the city from maintaining the nuisance, if it is, in fact, unlawfully contributing to the pollution of the stream.

5. SAME—*parol consent to pollution of a stream is revocable.* Parol consent by a lower riparian owner to the pollution of a stream by an upper proprietor vests no right which may not be revoked at any time.

6. DRAINAGE—*the right of drainage is an easement requiring written evidence.* The right to drain through the lands of another is an easement in land, which must be created by deed or conveyance in writing, except in cases coming within the act of 1889, concerning drains constructed by mutual consent. (Laws of 1889, p. 116.)

7. SAME—*city has no right to connect with mutual drain without consent of all parties.* Consent by a lower riparian owner to the construction of a drain by an upper owner does not authorize a city to connect the sewerage system with such drain, even with the consent of the upper owner, since section 2 of the act of 1889, relating to mutual drains, requires the consent of all parties interested in the drain to any connection therewith by others.

8. INJUNCTION—*granting or denial of an injunction is within sound discretion of the court.* The granting or denial of an injunction is a matter resting in the sound discretion of the trial court, and a court of review will not interfere, in the absence of clear proof of an abuse of such discretion.

APPEAL from the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding.

This action was begun at the November term of the circuit court of Henry county, 1900, and is a bill for injunction against the city of Kewanee to restrain it from discharging certain offensive sewerage upon the lands of appellees, which adjoin said city on the east. The bill alleges that a stream of water has its source upon the tract of land upon which the city is located, and in the natural course of drainage flows across the lands of appellees described in the bill; that the stream in its natural state is suitable for drinking purposes, and renders the pasture lands of the appellees, through which it flows, valuable; that the defendant city, without the consent of appellees, has constructed drains and sewers, which discharge upon the said premises of appellees noxious, filthy and polluted waters, defiling said stream and rendering it unsuitable for the purposes to which it is adapted, viz., pasturage, cultivation and building lots

for residences; that the said lands are arable lands, and are used for farming purposes and for the pasturage of horses, cattle and hogs; that lots laid out thereon are suitable for building purposes, and would be valuable therefor but for the nuisance created by said sewerage, which, by emitting injurious and offensive odors, creates a nuisance to the neighborhood and occasions the complainants great loss and irreparable injury; that quite a number of residences, in which people reside, are in the immediate vicinity of the nuisance complained of; that by reason of said nuisance complainants are obstructed and hindered in and about the cultivation of their crops; that by reason of the discharge complained of, the waters of said stream are rendered injurious to the animals pasturing upon said lands to such an extent as to deprive complainants of the beneficial use of the said pasture for stock purposes, and that if the same is permitted to be continued complainants will suffer great loss.

Demurrer was filed to the bill and overruled. A plea in bar was then filed, setting up that after the matters alleged in the bill, to-wit, on May 26, 1899, complainant Robert Otley, having filed suit in trespass on the case against the defendant for damages to the same lands and for the same causes alleged in the present suit, obtained a judgment against the defendant for $400. This plea was demurred or excepted to, which exception was sustained. Answer was then put in, and the defense set up in the plea was renewed and replication filed and issues joined. Appellee testified that before the said nuisance was created there was good spring water on said premises, used by him for stock purposes and for drinking water, which uses were destroyed by reason of said nuisance.

The cause was referred to the master to take proof and report conclusions. The master, in his report, found all the contentions in favor of the appellees and recommended that the relief asked be granted. Exceptions

were filed to the report and overruled, and a decree entered perpetually enjoining appellant from discharging or allowing to be discharged upon the premises of appellees, the waters and sewage complained of.

North-west of the lands of appellees is located the plant of the Western Tube Company, where are employed in the neighborhood of twenty-five hundred persons. From this plant there is a natural depression, extending through the city to and across the lands of appellees. Into this depression the water of the south-eastern portion of the city, as well as the water from the tube company, naturally drains, and said drainage leads to the stream extending through the lands of appellees. From the tube company's works to the Otley lands this depression crosses some five or six streets of the city, and at the street intersections culverts have been placed by the city, said culverts in some cases extending clear across the street, in others just across the traveled road. The lots along this course have been gradually filled in, and by a gradual development there has come to be a continuous line of tile or sewer-pipe drainage extending from the grounds of the tube company down this natural water-way, and discharging into a man-hole on the east side of East street (the west boundary of the Otley lands) and three or four rods north of the Otley open ditch. Tiles or drains along some of the streets crossed by this line of drainage connect with it for the purpose of carrying off the surface water of the streets, and on other streets are grated openings for allowing the surface water to flow into the drain in question. From the man-hole above mentioned a twelve-inch tile extends to and discharges into the Otley ditch. From the same man-hole an eight-inch sewer tile extends east and across the Otley lands and is just north of the open ditch through said lands. The Haxtum Steam Heating Company was the predecessor of the Western Tube Company, and long prior to the establishment of the drain above spoken of,

extending from the tube company's works to the Otley lands, the Haxtum company sent its drainage down this depression. After the establishment of the tube company large quantities of crude petroleum and oil were used for fuel, and tallow was used on the rolls of the company, and quantities of acid were used in the galvanizing department.. The oily, greasy, acid refuse from the tube company formed oily deposits along the ditch across the Otley lands. About ten years prior to the commencement of this suit the nature of this drainage had become such that Otley made complaint to the tube company, and as a result the sewer tile above mentioned was laid across the Otley lands. There is conflict in the evidence as to just what was the understanding of the parties at the time this tile was put in. ' Otley claims that at that time he stated that the eight-inch tile was insufficient. The master found that said tile was put in as an experiment, merely, by the joint action of the village of Kewanee and the tube company, to which finding exception was taken and overruled. After several years this tile became clogged up, so that the discharge from the drain from the direction of the tube company's works no longer passed through it, but passed from the manhole through the twelve-inch tile spoken of, down into and through the Otley open ditch, where it has since been running, except for a short time after the eight-inch tile had been, at one time, taken up, cleaned and re-laid. In May, 1899, Otley sued the city for damages resulting from this discharge above spoken of, and recovered the judgment already designated in the plea of defendant. The city offered to again have this eight-inch tile spoken of cleaned, but Otley refused, claiming it was useless to do so.

ROBERT C. MORSE, THERON H. CHESLEY, and CHARLES K. LADD, for appellant.

JAMES K. BLISH, and WILSON & MOORE, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

Counsel for appellant argue that the allegations of complainants' bill are of such a general nature that the aid of equity cannot be invoked in behalf of appellees; that the injury complained of is simply a pecuniary one, susceptible of being compensated by a judgment for damages, and hence the allegations are not such as will sustain a bill in equity seeking an injunction. The whole contention seems to be that the case presented is not one for equitable interference.

The master to whom the case was referred, found that upon the tract of land upon which said city is located a stream of water has its source, which, in its natural state, flows down and across the parcels described as belonging to appellees, the water of which stream, in its natural state, is pure and wholesome for drinking purposes for stock; that on said premises is a spring of pure water, which is discharged into said stream, affording a good and sufficient supply of pure water for stock; that the city, without the consent of the appellees, has constructed certain drains and sewers, which discharge upon the lands of appellees certain noxious, filthy and polluted waters, in which are carried great quantities of poisonous acid and oily and greasy substances, defiling said stream and rendering it unfit and unsuitable for the uses and purposes aforesaid, and emitting noxious, injurious and offensive odors, so as to create a nuisance which is offensive to the neighborhood, making an irreparable injury to the waters, and that the city threatens to continue indefinitely to discharge said polluted waters upon the lands described; that on the lands in question was a spring of pure water, which was becoming unfit to use for stock purposes by being defiled by the water flowing over said lands from said sewer, the water from the sewer flowing into or backing up into the spring; that the water from the said sewer injuriously affected

cattle and hogs; that urinals in the yards of the Western Tube Company were connected with the sewer and that certain man-holes or street inlets took into the sewer the refuse water of the street. Samples of the water flowing from the sewer in question were admitted in evidence, and the evidence unmistakably showed that it was of a composition positively injurious to persons or animals. Exceptions to the master's report were overruled by the chancellor, who found the equities of the case were with the complainants and that they were entitled to the relief asked.

From a review of the evidence we are of the opinion that the master was amply justified in reaching the conclusions embodied in his report, and the chancellor did not err in overruling the exceptions to said report. The granting or refusal to grant an injunction rests in the sound discretion of the trial court, and its action cannot be disturbed in the absence of clear proof of an abuse of such discretion. (*Platt* v. *Waterbury*, 72 Conn. 531.) As indicated above, we are of the opinion, not only that there has been no abuse of the discretion which the law vests in an equity judge, but that there has been a proper application of equity principles in the case at bar.

Counsel for appellant argue that the judgment at law for damages which was set up in the answer should have been held to be a bar to the relief sought in the present bill; that the damage complained of was not of a character to furnish ground for equitable relief by injunction; that it is capable of compensation by a judgment at law; that the injury complained of is of a permanent nature, and that future, as well as present or past, damages are recoverable in a single action, and in such case but one recovery can be had. This contention, we think, is not consonant with better reason nor in harmony with the adjudicated cases. In the case of *Barton* v. *Union Cattle Co.* 28 Neb. 250, the injury complained of was the pollution of a water-course, and the court there said: "I do

not deem it necessary to discuss the question whether
the plaintiffs have a remedy by an action at law, for I
understand it to be settled by the authority of the cases
cited, as well as many others, that a continuing nuisance,
by polluting the waters of a stream, and others of a like
character, may be proceeded against either in law or in
equity, at the election of the injured party,"—citing *Webb*
v. *Portland Manf. Co.* 3 Sum. 189; Angell on Water-courses,
sec. 444, and cases there cited.

A case that has been often cited and adhered to as
presenting a clear and correct exposition of the princi-
ples of law applicable in cases analogous to the present,
is that of *Holsman* v. *Boiling Spring Bleaching Co.* 14 N. J.
Eq. 335, in which it is said: "Every owner of land through
which a stream of water flows is entitled to the use and
enjoyment of the water, and to have the same flow in its
natural and accustomed course, without obstruction, di-
version or corruption. The right extends to the quality
as well as the quantity of the water. The court of chan-
cery has a concurrent jurisdiction with courts of law, by
injunction, equally clear and well established in cases
of private nuisances, and it is a familiar exercise of the
power of the court to prevent, by injunction, injuries to
water-courses by obstruction or diversion. * * * A
disturbance or deprivation of that right [to the use and
enjoyment of the water in its natural state] is an irrepa-
rable injury, for which an injunction will issue. * * *
Where the nuisance operates to destroy health or to
diminish the comfort of a dwelling, an action at law fur-
nishes no adequate remedy and the party injured is en-
titled to protection by injunction. * * * It is urged
that the right of the complainant is not clear, and must
therefore be fully established at law before an injunction
will issue. Where the complainant seeks protection in
the enjoyment of a natural water-course on his land, the
right will ordinarily be regarded as clear, and the mere
fact that the defendant denies the right by his answer

or sets up title in himself will not entitle him to an issue before the allowance of an injunction."

In the case of *Butler* v. *Village of White Plains*, 69 N. Y. Sup. 193, the defendant village operated a sewerage disposal plant, the effluent from which was deposited in a river on which the plaintiff was a lower riparian owner. Such discharge at times produced a foul and offensive odor over the plaintiff's lands and polluted the waters of the stream. It was held, that as plaintiff had a right to the reasonable use of the river in its natural flow and purity, the injury was a continuing nuisance, and hence, though plaintiff might have an adequate remedy at law for the damages already suffered, equity would restrain the same to prevent a multiplicity of suits.

In the case of *Merrifield* v. *Lombard*, 13 Allen, 16, it was held that any user of a stream by an upper proprietor which substantially diminishes its volume or defiles or corrupts it to such a degree as essentially to impair its purity and prevent the use of it for any reasonable and proper purpose to which running water is usually applied, is improper and will be enjoined; that the acts of the defendant tended to create a nuisance of a continuous and constantly recurring nature, for which an action at law would furnish no adequate relief, and a perpetual injunction was granted.

The contention of appellant's counsel that the judgment at law heretofore alluded to is a bar to the present action we regard as unsound. From the cases cited in this opinion it is clear that the courts have regarded acts such as are complained of in the case at bar, proper subjects of equity jurisdiction, and such a nuisance as is here sought to be enjoined as continuous and constantly recurring, rather than permanent. In the case of *Butler* v. *Village of White Plains, supra,* the right of a lower riparian owner to enjoy, unpolluted from the sewage of the village, the waters of a stream was in question, and it was held that such owner had a right to the reasonable

use of the river in its natural flow and purity, and the injury was a *continuing nuisance,* and hence, though he might have an adequate remedy at law for damages already sustained, equity would interfere to prevent a multiplicity of suits.   In *Merrifield* v. *Lombard, supra,* it was held that the corruption of a stream which prevented its use for any reasonable and proper purpose to which running water is usually applied, was a nuisance of a *continuous and constantly recurring nature* and for which wrong an injunction would lie.   In cases of this character courts of law and equity have concurrent jurisdiction. (*McCallum* v. *Germantown Water Co.* 54 Pa. St. 40; *Gardner* v. *Newberg,* 2 Johns. Ch. 161; *Proprietors of Mills* v. *Water Supply Co.* 21 N. E. Rep. 761.) When a nuisance is regarded as a continuing rather than a permanent one, judgments at law are held to afford compensation only for the injury sustained to the time of such judgment, and a continuance of the nuisance is a grievance for which subsequent actions may be maintained.   (*Schlitz Brewing Co.* v. *Compton,* 142 Ill. 511; *Chicago, Burlington and Quincy Railroad Co.* v. *Schaffer,* 124 id. 112; *McConnel* v. *Kibbe,* 29 id. 485; *Illinois Central Railroad Co.* v. *Grabill,* 50 id. 241.) But should the injured party desire to avoid a multiplicity of suits and to have the nuisance abated, equity alone affords him an adequate remedy, and in this case the judgment pleaded is no bar to the relief sought.

Nor is the contention in accordance with what has generally been understood to be the rule applicable to such cases.   In the earlier cases and text books relative to nuisances and equitable relief relating to them, the rule was commonly announced that before relief by injunction would be granted the person injured should establish the fact of the nuisance by an action at law. This rule, however, has been departed from in this State, and we have held that where the facts establishing the nuisance were clear and there was no substantial doubt as to the right of relief against an existing nuisance,

equity would assume jurisdiction in the first instance, (*Village of Dwight* v. *Hayes*, 150 Ill. 273,) and we are unwilling to now go to the other extreme, and hold that the establishment of the fact of a nuisance by an action at law is a bar to a proceeding in equity.

The case at bar, however, we think is even stronger for appellees than is necessary to bring it within the principle as above laid down. The principle of law which contemplates that damages sustained for a permanent injury to land shall be recovered in one action is applicable only to those cases where the party or agent committing the injury acts within the authority of the law. In this case, when the sewage of the defendant city, or any part thereof, though combined with sewage or deleterious waters from other sources, was cast upon the lands of appellees or mingled with the waters of a stream running over the same, so that a nuisance was created as to appellees and they were injured thereby, such act of the defendant was unlawful and it could not be sanctified by time. Nor could it be said that such a nuisance was a permanent one, for it would be the duty of its authors to have it abated. *Proprietors of Mills* v. *Water Supply Co. supra; Irrigation Co.* v. *Canal Co.* 6 Utah, 246.

If, however, it be regarded that the eight-inch tile across appellees' land was originally provided as a satisfactory arrangement for the carrying off of this objectionable sewage, but, as a matter of fact, it subsequently became inadequate for such purpose, even then appellees would not be precluded from obtaining relief, upon proof of such inadequacy and damage resulting therefrom, and a prior judgment for damages would be no bar to the present action. In such case, appellees would not be bound to assume that the provision made to protect them from damage, if found to be inadequate, would be a permanent one, but it would be the duty of the proprietors of the land above them, who sought to cast this burden upon appellees' land, to make whatever provision

was necessary to save them free from injury, and the moment that this was not done a right of action would be created in appellees. *Chicago, Burlington and Quincy Railroad Co.* v *Schaffer*, 124 Ill. 112.

There is some conflict in the evidence as to the original position assumed by appellees in regard to this tile, but even if there were none, and the version of their relation as given by appellant be taken as correct, even then there could be no estoppel, as a mere parol consent for the pollution of a stream or the creation of a nuisance vests no right not capable of revocation at any time. (*Village of Dwight* v. *Hayes*, 150 Ill. 273; *Barrett* v. *Mount Greenwood Cemetery Ass.* 159 id. 385.) The right of drainage through the lands of another is an easement requiring for its enjoyment an interest in such lands, which cannot be conferred except by deed or conveyance in writing. (*Pifer* v. *Brown*, 43 W. Va. 412; 49 L. R. A. 497; *Tanner* v. *Volentine*, 75 Ill. 624.) The subject of such an agreement would be within the Statute of Frauds, and void, not being in writing. Such is the rule at common law, and such rule obtains and is applicable in this State to all cases except those coming within the provisions of the act entitled "An act declaring legal drains heretofore or hereafter constructed by mutual license, consent or agreement, by adjacent or adjoining owners of land, and to limit the time within which such license or agreement heretofore granted may be withdrawn," approved June 4, 1889, in force July 1, 1889, (Laws of 1889, p. 116,) which act is paragraphs 228-231 of chapter 42 of the second edition of Starr & Curtis' Statutes, and relates to the construction of drains by mutual license, and is invoked by appellant, which insists that appellees are estopped by virtue of that act and certain facts insisted upon by it as bringing the case within said act. Section 1 (paragraph 228) of that statute provides: "That whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license,

consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners, or where the owner or owners of adjoining or adjacent lands shall hereafter by mutual license, consent or agreement, be permitted to connect a drain with another already so constructed, or where the owner or owners of the lower lands has heretofore or shall hereafter connect a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein."

The evidence discloses that Emerit Baker was vice-president of the Western Tube Company, and that appellees made complaint of the character of the sewage coming from the plant of that company and cast upon appellees' lands; that portions of the city and the lands of many holders lay between the lands of the tube works and appellees' lands, and the sewage from the tube works went through a line of natural drainage until it reached appellees' lands. Baker recognized the justness of appellees' complaint and undertook to remedy the difficulty, and proposed to appellees to lay, and did lay, across appellees' lands, outside the course of natural drainage, or rather outside the ditch and natural way but along the course of the natural fall, thirty-nine hundred feet of eight-inch sewer pipe, which was paid for by the Western Tube Company. This pipe was carried back to a sort of man-hole or catch-basin, where the drainage would be gathered and conducted thence through the sewer pipe. This man-hole or catch-basin was about two rods away from the branch or natural waterway. After this sewer was thus constructed the residents along the line of natural drainage between the Western Tube Company's works and appellees' lands began to drain their lands into the drains, and the citizens, together with the city, (the city and the land and lot owners paying the

expense thereof,) practically constructed a system of sewerage, consisting principally of regular sewer pipe, most of which was twenty-four inch tile, and connected the same with the said man-hole near appellees' premises, so that the eight-inch tile through appellees' lands was required not only to take care of the sewerage coming from the Western Tube Company, but to take care of all the sewerage, including the rainfall, the house and other sewage, of that portion of the city lying between the tube company's works and appellees' lands, in consequence of which the tile laid by the tube company on appellees' lands became filled and stopped up, so that it would not carry the sewerage or any considerable portion of it. This man-hole or catch-basin, where the sewerage was accumulated and to be discharged into the sewer pipe across appellees' lands, was also situated in the line of the natural depression, and so near the ravine and spring branch forming the natural drainage that when the sewer pipe would not receive and carry the sewage across appellees' lands it sought the course of natural drainage, and was drained down the ravine and spring branch, as complained of in the bill. There is no pretense that Baker was acting for the city, or for anybody except the Western Tube Company, and any agreement or arrangement that he might have made with the appellees would not authorize appellant to construct a public system of sewerage that should carry obnoxious matter and the general sewerage of the city into this same drain.

Section 2 of the statute that is here invoked, which is paragraph 229 of chapter 42, (Starr & Cur. Stat. 1896, p. 1583,) provides: "It shall not be lawful for either of the parties interested in said drain to authorize any other person or persons to connect therewith without the consent of all the parties interested in said drain, and all drains connecting therewith without such permission shall be unlawful, and any person interested, may by bill

in chancery, compel the person or persons' constructing such unlawful drain to fill the same up and in addition may have a right of action for all damages occasioned thereby." Appellant does not claim to have had appellees' consent to thus connect with the line of sewer pipe laid across appellees' land by the Western Tube Company, and while the evidence tends to show the tube company co-operated with the city and the property owners between the tube company's works and the land of appellees in the construction of the drains that were afterwards carried to the man-hole above mentioned, this clearly was contrary to section 2, *supra*, of the act relied on, as such connection could not be made "without the consent of all parties interested in said drain." When this statute is considered all together, it is very clear that it cannot in any way benefit appellant, but if it is to be given any effect at all it would be favorable to the relief claimed by appellees.

The further contention of counsel for appellant, that the objectionable sewerage came from some other source than that of appellant, is also untenable. It was found by the master that the defendant had constructed sewers which discharged the objectionable matter referred to upon the lands of appellees. We are unable to say that such finding was not warranted by the evidence. Though other sources than that of the defendant city may have been responsible for the collection of this objectionable sewage, such fact furnishes no defense to the defendant here, if it in fact contributed to the nuisance complained of and participated in the pollution of the waters that caused injury to appellees. *Richmond Manf. Co.* v. *Atlantic, etc. Co.* 10 R. I. 106; *Mansfield* v. *Hunt,* 19 Ohio C. C. 488; *Attorney General* v. *Leeds,* L. R. 5 Ch. 583; *Paper Co.* v. *Pope,* 57 N. E. Rep. 721; 28 Am. & Eng. Ency. of Law, 968; *Village of Kewanee* v. *Ladd,* 68 Ill. App. 154; *Barrett* v. *Mount Greenwood Cemetery Ass.* 159 Ill. 385; *Watson* v. *New Milford,* 72 Conn. 561.

Counsel for appellant also contend that the allegations of complainants' bill are not such as show the kind of injury to them necessary for the interposition of a court of equity by injunction. While the allegations of injury in the bill are to some extent general, we think the personal injury to appellees is made sufficiently explicit and by the evidence so clearly established that relief ought not to be denied. The bill alleges that the injury complained of is such as to constitute a nuisance on the lands of complainants, rendering them unfit for the uses to which they have been placed, depreciating their value and depriving the appellees of great gains and profits; that the stream thereon is polluted by the objectionable sewage, and that noxious, injurious and offensive odors are thereby created. The evidence unmistakably shows that the sewage complained of was such as to pollute the stream on appellees' land, rendering the waters thereof extremely deleterious to man and beast. The books are full of cases holding that equity jurisdiction is properly invoked to afford relief to a lower riparian owner where an upper proprietor defiles or corrupts a stream to such a degree as essentially to impair its purity and prevent its use for any reasonable and proper purpose to which running water may be applied. It is the right of every owner of land over which a stream of water flows, to have it flow in its natural state and with its quality unaffected. The right to a stream of water is as sacred as a right to the soil over which it flows. It is a part of the freehold, of which the owner cannot be disseized except by due process of law, and the pollution of a stream constitutes the taking of property, which may not be done without compensation. *Gardner* v. *Newberg*, 2 Johns. Ch. 161; *Simons* v. *Patterson*, 48 L. R. A. 717

In accordance with the views above expressed, the decree of the lower court is affirmed.

*Decree affirmed.*